CHEVROLET MUNCIE DIVISION OF GENERAL MOTORS CORPORATION *v.* HIRST.

[No. 17,051. Filed February 1, 1943. Rehearing denied February 24, 1943. Transfer denied March 29, 1943.]

*Sidney S. Miller* and *Harold H. Bredell,* both of Indianapolis (*William A. McClellan,* of Muncie, of counsel), for appellant.

*Archie Lapin,* of Muncie, and *William T. Stoops,* of Indianapolis, for appellee.

DRAPER, J.—This was a proceeding before the Industrial Board under the Indiana Workmen's Occupational Diseases Act, being Acts 1937, ch. 69, § 1, p. 334, § 40-2201 *et seq.,* Burns' 1940 Replacement, and is the second appeal of this case to this court. See *Hirst* v. *Chevrolet Muncie Division, etc.* (1941), 110 Ind. App. 22, 33 N. E. (2d) 773.

Following the decision of this court in the case last noted, such proceedings were had as that the Industrial Board after hearing additional evidence found for the employee, the appellee Hirst, and awarded him compensation—hence this appeal by the appellant company.

The board found, in so far as it is necessary to set out the finding, that the appellee in the performance of his work was exposed to certain atmospheric hazards to which the general public is not exposed, by reason of his having been compelled in the course of his employment to inhale various chemical fumes and different kinds of dust which permeated the air in a part of the appellant's plant where he worked, all of which caused an inflammation in the appellee's lungs and bronchial tubes resulting in an occupational disease. That he has been and is now disabled by a disease known as bronchiectasis which was an incident of an occupational disease. The board further found that there is a direct causal connection between the conditions under which the appellee performed his work and the disease from which he is suffering, and which disease followed as a natural incident of the work as the result of exposure occasioned by the nature of the appellee's employment.

The appellant assigns as error that the award of the full board is contrary to law, which presents both the

question of the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts. § 40-2220, subdiv. (f), Burns' 1940 Replacement.

The evidence most favorable to the appellee shows that on the 16th day of May, 1938, appellee was in the employ of appellant at an average weekly wage in excess of thirty ($30.00) dollars and that on September 13, 1938, he filed his application for compensation. That the appellee, then a well and healthy man who had never suffered from influenza or any infectious disease, commenced work in the appellant's factory in Muncie on the 16th day of November, 1936, after having been physically examined by the appellant's physician, who found the appellee to be in a healthy physical condition at that time and who approved and passed him as being in good health and capable of going to work. That he started work in the Heat Treat Department where there were cyanide pots, lead pots, oil baths, a shot blast machine, gas ovens and annealing furnaces, and where caked cyanide and oil were drilled out of the centers of certain materials and the residue blown by an air hose into the atmosphere. That fumes from cyanide pots, lead pots and furnaces and dust from the blasting machines, from the carbonizing machines and from the cleaning of centers, permeated the air and settled everywhere they worked. That the materials in process of manufacture were heated to a high temperature in the cyanide pots and were then taken out and dipped in the oil bath and placed upon a conveyor and conveyed through a washer made up of steam, hot water and soaps. The temperature in that department was not normal, but was hot in some places and cool in others. About the first part of 1937, the appellee began to have what seemed to be colds and to

have various catches in his back and neck and by May of 1937 he was coughing a good deal, his nose and throat were irritated and he was running a temperature and lost some time on account of that condition. He would at times lie on the bed and cough until he almost choked, and at times suffered such spells of coughing that he would cling to the work bench or go outside and get his breath. On the 4th day of July, 1937, he was coughing up blood and went to his physician, who advised him that if he did not get out of the Heat Treat Department it would kill him, and he took a statement from his doctor to appellee and was transferred out of that department on or about the 7th day of July, 1937. Until he was transferred he had lost weight steadily but after he was transferred he felt somewhat better and began to gain weight but never got back to normal. In November of that year he was again put into the Heat Treat Department and he began to feel worse again from fumes and dust in his throat which caused him to gag and vomit. In December of 1937 he lost time from work and when he returned to work was again transferred out of the Heat Treat Department and remained away from it until May of 1938 when he was again placed in that department for the third time and remained there about five days. Upon resuming work in that department he underwent severe coughing and spitting and had pleurisy in his right side. His throat and nose were irritated and he ran an extremely high temperature. On recommendation of his physician he quit work on May 16, 1938, and went to Arkansas for his health, where he remained until the early part of 1939, when he again reported for work but he was suffering great pain, his chest and back hurt and appellee's foreman told him to take a leave of absence until he could do a day's work. In April, 1939, he stopped

work for good and since that time has been unable to engage in any gainful occupation and is at the present time wholly disabled for work.

The evidence further discloses that at least one other employee working in the same department was affected in like manner as the appellee though so far as the evidence discloses, to a lesser extent. The appellee's condition is permanent and the prognosis is unfavorable.

Several doctors testified in the case to the effect that the appellee is afflicted with bronchiectasis, and that in their opinion his condition was caused by breathing some kind of dust or irritating matter while at his work, and that in their opinion there is a definite causal connection between appellee's condition and his employment. That one of the usual causes of bronchiectasis is irritating matter from some sort of occupational exposure and that in their opinion appellee is suffering from a lung condition resulting from working in unfavorable atmosphere. That appellee worked in those surroundings for a sufficient period to permit the trouble to develop, and that in their opinion the origin of his condition is connected with his employment. That bronchiectasis sometimes follows whooping cough, influenza, or pneumonia and commonly comes about as the result of breathing irritating fumes and gases or irritating particles of matter such as minute particles of sand or anything that will produce irritation and induce prolonged and excessive coughing. The disease does not result spontaneously from any condition but comes on gradually over a period of time. That no definite cause for bronchiectasis has ever been established and that the general public does suffer from the disease. There was also expert testimony to the effect that the appellee is afflicted with bronchiectasis, apparently as a result of an inflammation in his lungs and bronchial tubes

causing his chronic cough. There is no evidence in the record to the effect that inflammation of the lungs and bronchial tubes is an ordinary disease of life to which the general public is exposed outside of the employment.

The appellant in his brief challenges the legality of the board's award in that its findings fail to properly define the disease which appellee claims he contracted in appellant's plant as an occupational disease, and that said award does not assert that said disease was not one to which the general public is exposed outside of the employment. He further asserts that the disease complained of by appellee and claimed by him to have been contracted while working in appellant's plant was not an occupational disease within the meaning of the law, because it was one to which the general public is exposed outside of the employment and did not follow as an incident of an occupational disease, and further that the disease complained of by appellee was not shown by the evidence to have been directly caused by the conditions under which appellee worked and was not shown to have followed as a natural incident of his work, and that there was no evidence that appellee was engaged in an occupation in which the hazard of the disease complained of by him existed.

The appellant concedes that in determining the question as to whether or not there is sufficient evidence to sustain an award of the Industrial Board, that evidence alone most favorable to the appellee will be considered. The rule is so well established that it is unnecessary to cite authorities to the proposition that if there is any competent evidence to sustain the board's finding of facts, that finding will not be disturbed by this court, though the evidence may be conflicting. If, however, the only evidence which operates to create such a conflict is not of a substantial

character, it will not be deemed sufficient to invoke the operation of this rule. *Loucks* v. *Diamond Chain & Mfg. Co.* (1941), 218 Ind. 244; 32 N. E. (2d) 308.

Section 6 of the act under consideration, being § 40-2206, Burns' 1940 Replacement, defines occupational diseases as follows: .

"(a) As used in this act, the term 'occupational disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section.

"(b) A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. (Acts 1937, ch. 69, § 6, p. 334.)"

As we understand this section, it provides that ordinary diseases of life to which the general public is exposed outside of the employment shall be compensable only where such diseases follow as an incident of a disease arising out of and in the course of the employment, subject only to the requirements of subdivision (b) of said section.

Bronchiectasis is a disease common to the public and one to which the public generally is exposed outside of any employment. It may, and frequently does, afflict the old and the young, the rich and the poor, the worker and the gentleman of leisure. It is a disease which sometimes follows as an incident to whooping cough, influenza, pneumonia and other diseases, and commonly follows also as an incident to diseases which provoke severe and prolonged coughing such as inflammation of the lungs and bronchial tubes. The question to be decided therefore is whether bronchiectasis is compensable in this case, that is to say whether in this case it followed as an incident of an occupational disease as defined in our statutes.

Having in mind that our statutes do not provide that ordinary diseases of life to which the general public is exposed outside the employment may not under proper circumstances be compensable, but that such shall be compensable when they follow as an incident of an occupational disease as defined by the statute, we have carefully considered the evidence in this case and we are convinced that in this particular case the disease of bronchiectasis followed as an incident of an inflammation of the lungs and bronchial tubes which itself arose out of and in the course of appellee's employment by the appellant under circumstances consistent with the requirements of subdivision (b) of section 6 of said act.

It is true that although the Industrial Board is not bound by the strict rules of procedure applicable in actions at law, it is nevertheless required to make a finding of facts sufficient to sustain the award, and if it fails to do so the award is subject to reversal when properly presented on appeal. *Northern Ind. Power Co.* v. *Hawkins* (1925), 82 Ind. App. 552,

146 N. E. 879, but we are of the opinion that the findings and award of the board in this case are sufficient to withstand the objection urged.

Expert testimony of the same type as that admitted in the case of *Loucks* v. *Diamond Chain & Mfg. Co.*, *supra*, and according to the evidence most favorable to the appellee, subject to the same infirmity, was admitted in this case. Under the rules above announced and on the authority of that case it cannot benefit the appellee.

Finding no reversible error, the award of the Industrial Board is affirmed.

NOTE.—Reported in 46 N. E. (2d) 281.