121 Ind. App. 273 (1951)
98 N.E.2d 681
ADAMS ET AL.
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.
No. 18,151.
Court of Appeals of Indiana.
Filed May 17, 1951.
David Cohen, of East Chicago, for appellants.
J. Emmett McManamon, Attorney General, Glen F. Kline, Deputy Attorney General, and Allen P. Twyman, of East Chicago, for appellees.
ROYSE, J.
Appellants seek a review of an order of the Review Board of the Indiana Employment Security Division (hereinafter designated as the Board) denying them unemployment compensation.
*274 Appellants do not question the sufficiency of the evidence to sustain the award. In their brief they state the only question presented is: Did the Review Board correctly apply the law to the facts in this case when it ruled that the appellants belonged to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurred, any of whom are participating in or financing or directly interested in the dispute?
The statement of fact and findings of the Board are as follows:
"The employer is engaged in the manufacturing and processing of steel products at its plant in East Chicago, Indiana. It operates under a bargaining agreement with Local 1011 of the United Steel Workers of America  CIO extending bargaining rights to such union for all the production and maintenance employees at this employer's establishment with certain exceptions not herein involved.
"On and prior to February 3, 1950, the union was negotiating with the employer relative to new time rates for the operators of the No. 1 Continuous Butt Weld Mill, the necessity for which had resulted from certain changes in the mill designed to increase production. On February 3, 1950 the employer's superintendent ordered the operators of the No. 1 Continuous Butt Weld Mill to increase production under the authority of management's right to administer plans and methods of incentive earnings calculations under Section 8-A of the existing bargaining agreement. The operators refused to meet management's demands and left work in an unauthorized strike at 11 a.m., February 3, 1950. The action of the operators was in violation of the contract and contrary to the wishes of the union which was their authorized bargaining agent. Thereafter all negotiations between the employer and the union relative to the new time rates ceased and the operators *275 remained away from work from February 3, 1950. They returned to work on February 20, 1950, under the same conditions of employment at which they were employed on and prior to February 3, 1950. Production in the employer's establishment is integrated and progressive in nature, each department depending upon the preceding departments to furnish them with work. All the claimants involved herein were employees of the finishing department and dependent upon the operators to furnish them with the material with which to work. As a result of the strike of the operators, the employer was unable to furnish claimants with any work after they had completed that which had already been processed through the No. 1 Continuous Butt Weld Mill. The claimants continued to work after the strike of the operators until the employer laid them off because no work was available. Claimants involved herein and the operators are members of the same bargaining unit and all are eligible for membership in Local 1011, United Steelworkers of America  CIO., their bargaining agent. The employer had ample materials and orders on hand to have furnished continuous employment to the claimants had it not been for the strike of the operators.
"The Review Board finds that a labor dispute existed between the employer and the operators of No. 1 Continuous Butt Weld Mill on and prior to February 3, 1950, over the terms and conditions of employment of the operators of the No. 1 Continuous Butt Weld Mill; that as a result of such labor dispute, the operators of No. 1 Continuous Butt Weld Mill struck on February 3, 1950, and that as a result of such strike all the claimants involved herein were unemployed during the period from February 3, to February 19, 1950.
"The Review Board further finds that the operators of the No. 1 Continuous Butt Weld Mill and the claimants involved herein were members of the same bargaining unit for which Local 1011, United Steelworkers of America  CIO., was the authorized bargaining agent and that they and each of them were eligible for membership in such union.

*276 "The Review Board further finds that all the members of the bargaining unit are members of the same grade or class of workers.
"The Review Board further finds that the claimants' unemployment during the calendar weeks involved in the period from February 3, to February 19, 1950, was due to a stoppage of work due to a labor dispute at the establishment at which they were last employed and that they and each of them belong to the same grade or class of workers as the operators of the No. 1 Continuous Butt Weld Mill who were directly interested in and participating in the labor dispute which caused the stoppage of work. Consequently, the claimants and each of them are disqualified under Section 1504 of the Indiana Employment Security Act for their benefit rights during the calendar weeks involved in the period from February 3, to February 19, 1950."
Section 52-1539c, Burns' 1951 Replacement, provides as follows:
"An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which the board finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; Provided, That this section shall not apply if it is shown to the satisfaction of the board that: He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress; Provided, That if in any case separate branches of work which are *277 commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purposes of this section, be deemed to be a separate factory, establishment, or other premises."
In the case of Auker et al. v. Review Board, Indiana Employment Security Division et al. (1947), 117 Ind. App. 486, 494, 71 N.E.2d 629, in construing an analogous provision of an earlier Act, we held that where employees were once disqualified for benefits because their unemployment was due to a work stoppage which existed because of a labor dispute, the burden was on the employees to requalify themselves by establishing both of the conditions which would requalify them. In that case we did not consider the grade or class provision.
In construing practically an identical provision of the Illinois statute where the facts were substantially the same as in this case, the Supreme Court of Illinois said in the case of Local No. 658, Boot and Shoe Workers Union, et al. v. Brown Shoe Co., et al. (1949), 403 Ill. 484, 87 N.E.2d 625, 629, 630:
"In the present case it seems that in the first part of the proviso of section 7(d) the words `participating in,' `financing,' and `directly interested in' have a different meaning, one from the other, and that the third expression is not superfluous as being included within the first. Each of these expressions, as is pointed out above, refers not to the stoppage of work but to the labor dispute which causes the stoppage of work. Appellees argue, however, that all of the production workers, except the eighteen, by continuing work until the plant was forced to shut down, had then no dispute of any kind or character with their employer. This argument obscures or overlooks the distinction between labor dispute and resultant stoppage of work. All the production workers on *278 the one hand initially had a dispute with their employer and were engaged in the settlement thereof through their representative. A labor dispute remains such until finally settled. The plan agreed to was acceptable to the union, it may be presumed, because the wages thereby changed were to be the subject of renegotiation after a trial period. The degree of acceptability of this plan to the individual union members, which might vary all the way from wholehearted acceptance to intense opposition to the plan, is of no moment in determining whether a work stoppage by a part of the union production workers immediately thereafter threw out of work all of the present claimants; the question is, did the ultimate stoppage trace back to the dispute as a matter of effect and cause. When thus analyzed, all the facts show that it did. If all production workers were interested directly in the dispute initially, the character of their interest remained direct until the dispute ceased to be a dispute.
"The bargaining agent of the union is given power to negotiate with the employer for the benefit of every employee, and to use the economic pressure of the entire group in obtaining satisfactory settlements of labor disputes. Were it otherwise the bargaining agent of a union could subordinate the interests of the whole collective group to those of a part thereof. The proof that appellees had a direct interest in the labor dispute in this case lies in the fact that the employer is subjected to the joint economic pressure of the whole group without power to negotiate with the dissatisfied few, although they constituted an essential link in a continuous joint operation of all of the employees. When a labor dispute, which concerns a part or all employees, causes, as a direct result, a stoppage of work, it is one in which, under section 7(d), every employee thereby put out of employment is directly interested."
See also: Brown Shoe Co. v. Gordon, Director of Labor et al. (1950), 405 Ill. 384, 91 N.E.2d 381; State ex rel. Unemployment Compensation Commission v. Edmund *279 Lunceford et al. (1948), 229 N.C. 570, 50 S.E.2d 497.
We believe the reasoning of the foregoing cases places a reasonable construction of the provision of the Act here under consideration and is in accord with the social-economic objective sought to be achieved by the Unemployment Compensation Act.
In this case it seems obvious to us that the work stoppage was caused by a labor dispute. It was the strike which made it impossible for the employer to give appellants work. Production in the employer's establishment is integrated and progressive. Each department was dependent upon the preceding department to furnish it work. Appellants and the strikers were members of the same bargaining unit. This unit had the exclusive right to bargain with the employer. The employer could not negotiate or bargain independently with either appellants or the operators who engaged in the unauthorized strike. All belonged to the same grade or class of employees. Therefore, the order of the Board is not contrary to law.
Order affirmed.
Martin, J., and Crumpacker, J., dissenting.
NOTE.  Reported in 98 N.E.2d 681.