## OGILVIE v. REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 19,732. Filed September 4, 1962.]

*Richard L. Howard,* of Gary, for appellant.

*Edwin K. Steers,* Attorney General, and *Keith Campbell,* Deputy Attorney General, for appellee, Review Board.

*George P. Ryan, Leland B. Cross, Jr.,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellee, Taylor Forge & Pipe Works, Inc.

Ax, J.—This is an appeal by employee Leroy Ogilvie, hereinafter referred to as the claimant-appellant,

from a unanimous decision of the Review Board of the Indiana Employment Security Division. This appeal arises out of a dispute concerning the eligibility of the claimant-appellant for unemployment compensation benefits under the Indiana Employment Security Act. (Burns' Ann. Statutes, §52-1525, *et seq.*).

The former employer of the appellant, Taylor Forge & Pipe Works, Inc., and the Review Board appear herein as appellees.

Before the Review Board the claimant-appellant took the position that he was entitled to unemployment compensation benefits for the reason that he did not leave work voluntarily without good cause and was not discharged for misconduct in connection with his work. The employer-appellee took the position that the claimant-appellant either left work voluntarily without good cause or was discharged for misconduct in connection with his work and was, accordingly, ineligible for waiting period or benefit rights under the Act.

After an ex parte decision by a Claims Deputy against the claimant-appellant, the claimant-appellant appealed to the Referee who reversed the Claims Deputy and held for the claimant-appellant. Thereafter, the employer appealed to the Review Board and requested leave to introduce additional evidence. The Review Board denied the request for leave to introduce additional evidence but, on its own motion, remanded the case to the Referee for the purpose of taking certain additional evidence. Thereafter, the additional evidence was taken before the Referee. Thereafter, the Review Board held that while the Referee's decision was correct on the basis of the evidence he then had before him, the Referee's decision should be modified and should show that the

claimant-appellant was discharged for misconduct in connection with his work, and accordingly, was ineligible for waiting period and benefit rights under Section 1501 of the Act. Burns' Ann. Statutes, §52-1539 (1951 Replacement).

A review of the record tends to show that the claimant-appellant, Leroy Ogilvie, was employed by the employer-appellee as a crane operator in its Gary, Indiana plant up until the date of his termination on October 17, 1960.

Prior to the incident resulting in his termination, the claimant-appellant had received reprimands from his supervisors for safety violations, refusal to work and not reporting to his crane when called by his foreman. He had also been reprimanded for refusal to work when he was asked to operate a crane for the employer-appellee's maintenance department and refused, telling his supervisor that it was not his job and that the maintenance department should get its own crane. Such insubordinate conduct resulted in five written reprimands and a disciplinary layoff for the claimant-appellant prior to his termination.

On the afternoon and evening of October 17, 1960, the claimant-appellant was working as a crane operator on the 3:00 P.M. to 11:00 P.M. shift at the employer-appellee's plant. The claimant-appellant was assigned at the beginning of the shift to various production craneman duties by the production foreman, Henry Buczek. These duties included assignments in the employer-appellee's forge shop, department C-6 and department D.

Immediately upon being assigned these duties the claimant-appellant claimed that it was not his duty to work in these various departments. The production foreman advised him that he was the production

craneman on the shift and that he would have to perform the duties assigned him. Thereupon claimant-appellant commenced work in the forge shop. When the claimant-appellant's assignments in the forge shop were completed at about 4:00 P.M. he was sent to department C-6 yard to move pallets and bring in dies.

Upon finishing his assignments in the department C-6 yard, the claimant-appellant was sent to department D, a department that normally does not have overhead crane service, to lift a heavy piece from a machine therein. But in the meantime, about 5:30 P.M., the production foreman was advised that the claimant-appellant's services were needed at once in the forge shop. At that time the production foreman ordered the claimant-appellant down from the crane in department D in order to send him to the forge shop to make the moves needed there.

The claimant-appellant came down from the crane and upon being advised of the change of assignment told the production foreman that such an assignment was not his job and that he wanted a pass to go home. The production foreman advised him that he would get the pass, but that it would be considered a quit. Upon hearing this, the claimant-appellant advised the production foreman that his real reason for requesting to leave was that he was "sick" and wanted to go home, not immediately, but in an hour and a half, at 7:00 P.M. Prior to this time, the record shows there had been no mention of illness by the claimant-appellant, but only of the fact that he felt he didn't have to work in so many departments. At this juncture he did not say what was wrong with him, did not ask to go to the washroom and did not ask to be relieved. The production foreman advised the claimant-appellant that if he issued the pass to

the claimant-appellant he would consider it a quit, because he felt that the claimant-appellant was not sick, but was again refusing to do assigned work.

The claimant-appellant finally returned to work, leaving department D and going to the forge shop to make the moves needed there without further reference to his health. The production foreman remained in department D for some minutes and then proceeded to the forge shop. After claimant-appellant came down from his crane, the production foreman inquired of his health and he said he still wanted a pass to go home at 7:00 P.M. However, the production foreman needed a machine unloaded in department D and directed the claimant-appellant to go there and do that work. The claimant-appellant then advised the production foreman that he wanted to eat and he was advised by the production foreman that he should make the move in department D first, before eating.

Instead of going to department D, as directed by the production foreman, the claimant-appellant walked away in the direction opposite from department D without saying anything to the production foreman. The production foreman "hollered" at him, telling him that he was needed in department D and that he was walking off the job, but the claimant-appellant did not respond and kept walking away.

The production foreman then went to another department where he got another craneman to do the work that the claimant-appellant was supposed to have done in department D.

The production foreman returned to department D about fifteen minutes later to find the claimant-appellant walking through the plant, eating a sandwich. The production foreman advised the claimant-appellant that he didn't "need" him any more and

that he should report to the production foreman's office. The production foreman then advised the relief craneman specifically of his duties and returned to his office to meet with the claimant-appellant, but the claimant-appellant was not there.

The production foreman later found the claimant-appellant standing in the forge shop. The claimant-appellant was confronted by the production foreman, given a pass to leave the plant and told to leave. However, the claimant-appellant refused to leave and refused to take the pass. The production foreman then advised the claimant-appellant that if he did not take the pass and leave the plant he would be escorted from the plant by a plant guard. The claimant-appellant again refused to obey and the production foreman summoned a guard who thereafter removed the claimant-appellant from the plant. This was initially considered as a quit by the employer and a discharge by the employee.

Thereafter a grievance was filed by the claimant-appellant concerning his termination. In the meetings on the grievance the issue of whether or not the claimant-appellant was ill on the evening in question was never raised by his Union. In discussions of the incident with the personnel manager of the employer-appellee, the claimant-appellant variously explained his actions on the evening in question by telling him he had walked off the job to go to the washroom to eat and that he was unable to do the work in question. In these meetings, the employer-appellee advised the claimant-appellant's union that his refusal to work on the evening in question and his walking off the job further demonstrated the claimant-appellant's previously shown unresponsible attitude and denied

the grievance. The Union accepted the Company's position.

Under its Assigned Error No. 1, the claimant-appellant argues that the decision of the Review Board is contrary to law because the Review Board based its reversal of the decision of the Referee, "on matters which formerly had not been an issue at the time of the Appeals Referee hearing, to-wit: 'Whether or not claimant was discharged for misconduct in connection with his work.'"

Where an employee refuses to do his assigned work and as a result thereof is terminated is, of course, a very ambiguous situation. Whether in so doing an employee quits or is discharged for quitting work presents, by its very nature, a difficult situation to characterize.

The employer-appellee concedes that its personnel manager initially characterized the claimant-appellant's refusal to work and walking off the job as a quit. The Claims Deputy made the same analysis in initially denying the claimant-appellant unemployment benefits. However, after the production foreman was drawn into the case it became apparent that the case involved a discharge in connection with a refusal to work and insubordination. Accordingly, in the employer-appellee's Request for a Review Board Hearing it stated that the points in dispute were:

> "Whether or not claimant left work voluntarily without good cause and/or was discharged for misconduct."

Thus, the employer-appellee raised the discharge issue prior to the Review Board hearing and the claimant-appellant never objected to it.

In addition to the foregoing, whether or not the claimant-appellant was discharged rather than quit

was plainly an issue throughout all the earlier stages of the case. The claimant-appellant's termination was characterized as a discharge in the first Referee's hearing and the Referee found that it was a discharge in his decision. Claimant-appellant, in his brief, concedes that in the Referee's hearings the claimant-appellant's position was that he was "discharged without cause." The claimant-appellant's representative in the second Referee's hearing also took the position that the claimant-appellant was discharged. Thus, it can hardly be said, as the claimant-appellant contends herein, that whether the claimant-appellant's termination was a discharge rather than a quit was not an issue at the Review Board hearing.

Even if the discharge issue had not been in the case prior to the Review Board hearing, this does not avail the claimant-appellant.

The claimant-appellant has cited case authority to the general effect that a party cannot rely on one theory in a trial court and a different theory in an appellate court. However, it must be noted that all of said authority relates solely to actions appealed from trial courts to appellate courts. The claimant-appellant argues that the same rule of judicial appellate practice applies to the appeal from the Claims Deputy to the Referee and the Referee to the Review Board because the Referee and the Review Board are "appellate tribunals." The claimant-appellant, however, fails to cite any authority for this novel theory.

It has been generally established that appeal procedures within an administrative agency constitute administrative rather than judicial review and that the general legal principles applying in cases of appeal from trial to appellate courts do not apply to the various steps taken for review of

an order or decision entered by a subordinate tribunal of the administrative agency. See *Lutz* v. *Goldberg* (1950), 7 N. J. Super. 288, 73 A. 2d 65; *City of Passaic* v. *Division of Tax Appeals, Dept. of Treasury* (1959), 54 N. J. Super. 215, 148 A. 2d 630; *Lake Placid Club, Inc.* v. *Abrams* (1958), 179 N. Y. S. 2d 487, 6 A. D. 469; aff'd 188 N. Y. S. 2d 561, 6 N. Y. 2d 857, 160 N. E. 2d 92. There has been no statute or decision cited by the claimant-appellant which would indicate that the law of Indiana is to the contrary. Indeed under Section 1806 of the Act, the manner in which disputed claims shall be presented and the conduct of hearings and appeals is left to the regulation of the Review Board, "whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure." See Burns' Ann. Statutes §52-1542e (1951 Replacement). Consistent with this, this court has recently stated in *Massengale* v. *Review Board of Indiana Employment Security Division* (1961) 132 Ind. App. 587, 178 N. E. 2d 557:

"The Review Board . . . is not stifled in its proceedings and exercise of statutory functions by the technical niceties that often embarasses the dispensation of justice in the orthodox legal forms."

See also, *Chevrolet Muncie Division of General Motors Corporation* v. *Hirst* (1943), 113 Ind. App. 181, 189, points 5, 6, 46 N. E. 2d 281; *Nordhoff* v. *Review Board of Indiana Employment Security Division, et al.* (1959), 129 Ind. App. 378, 156 N. E. 2d 787.

Thus, even if the discharge issue had not have been an issue prior to the Review Board hearing, there is no legal reason why the Review Board could not make such a finding of fact and having made such a finding, it is conclusive and bind-

ing on this Court unless reasonable men would be bound to reach a different conclusion on the evidence in the record: See *Adams* v. *Review Board of Indiana Employment Security Division* (1951), 121 Ind. App. 273, 98 N. E. 2d 681; *Massengale* v. *Review Board of Indiana Employment Security Division, supra,* and *Youngstown Sheet & Tube Co.* v. *Review Board of Indiana Employment Security Division* (1954), 124 Ind. App. 273, 116 N. E. 2d 650.

In the final analysis the claimant-appellant is urging herein that the Indiana Employment Security Act affords only a very limited scope of review from the decisions of the Claims Deputy and the Referee. This theory is totally unsupported by the Act.

Under Section 1803 of the Act, the Referee is authorized to approve, modify or reverse the findings of fact and decision of the Deputy. Such decision thereafter is deemed to be the final decision of the Review Board unless the decision is appealed to the Review Board. See Burns' Ann. Statutes §52-1542b (1951 Replacement). Section 1812 provides that any "decision of the Review Board shall be conclusive and binding." See Burns' Ann. Statutes §52-1542k (1951 Replacement).

In addition, Section 1805 provides that if the "Review Board deems it advisable to procure additional evidence, it may direct the taking of such additional evidence . . . " See Burns' Ann. Statutes §52-1542d (1951 Replacement).

Thus, upon the employer-appellee's Request for Appeal to Review Board on February 24, 1961, the Review Board's jurisdiction was complete and it had the power to consider and determine the claimant-appellant's claim in all respects. This request expressly raised the discharge issue as well as the

quit issue. The Review Board was authorized to and did take additional evidence at the second Referee's hearing on June 19, 1961. The employer-appellee presented additional evidence concerning the discharge of the claimant-appellant at the second Referee's hearing. The transcript of this hearing shows that claimant-appellant made no objection to the employer-appellee's advance of the discharge theory of the case. Consistent with the foregoing, there was no objection to the employer-appellee's advance of the discharge theory before the Review Board.

The claimant-appellant's belated attempt to limit the scope of the Review Board's broad review authority in this court is without legal foundation. A thorough search of the Act shows that it does not limit the scope of review of the Review Board, nor does it expressly or impliedly authorize a partial or limited appeal from the Claims Deputy to the Referee or from the Referee to the Review Board. The appeal to the Review Board removes the claim in its entirety. As may be seen from even a cursory observation of the Act, any other holding would be inconsistent with the statutory method for the Review Board's final disposition of disputed benefit claims.

In *Charles Headwear, Inc.* v. *Board of Review* (1951), 11 N. J. Super. 321, 78 A. 2d 306, an employee appealed to the New Jersey Board of Review of the Division of Employment Security under a statutory procedure very similar to that provided in the Indiana Act. The employee appealed only one issue concerning his availability for work under the New Jersey Act and did not appeal from a companion finding that he had been discharged by his employer for misconduct. Despite this, the Board of Review took addi-

tional evidence relating to the discharge issue. The employee in that case, contrary to the claimant-appellant herein, tried to preserve his rights by attempting to limit the scope of the review before the Board of Review and the Board of Review held against him. The Superior Court of New Jersey held against the employee on appeal, stating at page 328:

" . . . The statute does not limit the scope of the review, nor does it expressly or impliedly authorize a partial appeal or the appeal from part of the decision of an appeal tribunal. The appeal removes the claim in its entirety. Any other holding would be inconsistent with the statutory scheme for the disposition of disputed benefit claims.

"The Board of Review does not exist solely for the purpose of reviewing the initial determination of the deputy and subsequent decisions of the appeal tribunal.

"It is recognized that unemployment compensation laws are essentially administrative in their character. 'The unemployment compensation acts are administered by administrative agencies which must be given wide discretion and freedom in their activities.' *Sutherland, Statutory Construction* (3rd ed.), sec. 7211.

"The Board had the power under R. S. 43: 21-6 (e), N. J. S. A., which is exercised in the present case, to assume jurisdiction of any claim pending before the appeal tribunal and to hold a hearing thereon. The intent of the statute is that a claim shall go forward in its entirety in each successive step in its consideration. There is no statutory compulsion to remand a claim at any stage of its progress toward final determination. The deputy and the appeal tribunal are, in effect, merely representatives or agents of the Board which is the ultimate fact-finding body. . . . "

There is nothing in the decisions or statutes of Indiana which indicates that the Review Board of the Indiana Employment Security Division does not have

the same wide discretion and freedom to decide any and all issues which it may find in a case. On the contrary, the previously quoted sections of the Act show affirmatively that the Review Board does have such discretion and freedom. Thus, the discharge issue was always in the instant case and was properly raised and presented to the Review Board, but even if it had not have been so raised, there is no legal reason why the Review Board could not find that the claimant-appellant was discharged for misconduct in connection with his work.

The claimant-appellant raises only one question under Assigned Errors No. 2 and 3, which are as follows:

2. That the decision of the Review Board is contrary to law.

3. That the facts found by the Review Board are not sufficient to sustain the decision rendered herein. The claimant-appellant argues that the Review Board erred in finding that it was "about 5:30 P.M." at the time of the incident where the claimant-appellant was called down from the crane in department D and ordered to go back to the forge shop to do some lifting there.

The portion of the Review Board Decision referred to by the claimant-appellant is as follows:

"The claimant went on with his various tasks as assigned, until he was called down from the crane in Department D and ordered to go back to the forge shop and do some lifting they needed there; whereupon the claimant said it was not his job and he wanted a pass to go home. The foreman then informed claimant that, because of his previous 'griping,' he could have the pass but it would mean he was quitting. The claimant then said he was ill and wanted to go home at 7:00, it then being about 5:30 P.M."

Claimant-appellant argues that this finding of fact concerning time was erroneous, that in fact it was 6:30 P.M. at this time and that such erroneous finding of fact affected the result of the case.

The transcript, however, squarely supports this finding of fact by the Review Board. The testimony of Henry W. Buczek on direct examination on this point was as follows:

> "A. Upon finishing his details in the C-6 yard, I sent him to Department D to make some moves . . . we had to have overhead crane service in a department that normally doesn't use any but because of the weight factor and the product it had to be removed from the machine and we needed the overhead crane. In the meantime, one of the employes from the forge shop came over and told me that they needed a crane in the forge shop, and since in Department D it would have involved only one man waiting for the lift and the forge shop a crew of five, I weighed the evidence and told Mr. Ogilvie to come down from the crane and go to the forge shop and make the moves they needed. He came down from the crane, told me it was not his job and that he wanted a pass to go home . . .

> "Q. What time was this approximately?

> "A. It was approximately, oh, I'd say, five-thirty . . ." There is no evidence in the transcript that the incident in department D took place at any time other than approximately 5:30 P.M. Thus, the undisputed evidence shows that the incident in issue took place at "approximately . . . five-thirty," and the Review Board found that it took place "at about 5:30 P.M." Based on the foregoing, it appears as though claimant-appellant may have misread the transcript in preparing his assignments of error.

Even if there had been an erroneous finding of fact with regard to the time the claimant-appellant came

down from the crane in department D, this error would be harmless. The discharge ultimately grew out of a later incident, after the claimant had gone to the forge shop when, after being directed to go back to department D by the production foreman, the claimant-appellant walked off the job and had to be replaced.

It is generally established that, as in appeals from trial courts, in appeals from administrative determinations to appellate courts, errors which are harmless or not prejudicial will not justify reversal. *Brown-Brockmeyer Co.* v. *Board of Review, Bureau of Unemployment Compensation* (1942), 70 Ohio App. 370, 45 N. E. 2d 152; *Asche* v. *Rosenfield* (1950), 405 Ill. 108; 89 N. E. 2d 885; 73 C. J. S. (Public Administrative Bodies and Procedure), page 620, Section 252 (f).

In the State of Indiana, it is well established that an error in the trial court's findings of fact is not ground for reversal on appeal unless a correction of the error will lead to a different judgment. *Marion Manufacturing Co.* v. *Harding* (1900), 155 Ind. 648, 58 N. E. 194; *Downey* v. *The National Exchange Bank* (1911), 52 Ind. App. 672; 96 N. E. 403; *Denny, Rec.* v. *Scoonover* (1926), 93 Ind. App. 118, 153 N. E. 779.

The time the claimant-appellant got down from his crane in department D can hardly lead to a different decision with regard to the claimant-appellant's discharge following his refusal to work and walking off the job later in the forge shop. Accordingly, even if the Review Board had committed error in this finding of fact, which it plainly did not, the error was harmless.

Decision affirmed.

Myers, J., Ryan, J., concur. Cooper, P. J., concurs in result only.

NOTE.—Reported in 184 N. E. 2d 817.