Walter G. REICHELT, Barbara J. Reichelt, Robert J. Delco and Jeanne M. Delco, Plaintiffs,

v.

UNITED STATES ARMY CORPS OF ENGINEERS and Indiana Department of Environmental Management, Defendants.

No. 2:93 cv 332.

United States District Court, N.D. Indiana, Hammond Division.

Feb. 14, 1996.

1092

Michael L. Muenich, Highland, IN, for Plaintiffs.

Timothy Burns, Natalie Duval, U.S. Dept. of Justice, Environmental Defense Section, Washington, DC, for EPA, Army Corps of Engineers.

Myra Spicker, Deputy Attorney General, Indianapolis, IN, for IDEM.

## ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on several motions. The plaintiffs, Walter G. Reichelt, Barbara J. Reichelt, Robert J. Delco, and Jeanne M. Delco, filed a Motion for Summary Judgment on November 3, 1994. The defendant, the United States Army Corps of Engineers, filed a Cross Motion for Summary Judgment on December 19, 1994. The defendant, the Indiana Department of Environmental Management, filed a Cross Motion for Summary Judgment on January 13, 1995. For the reasons set forth below, the plaintiffs' motion is **DENIED,** the United States Army Corps of Engineers' motion is **GRANTED,** and the Indiana Department of Environmental Management's motion is **DENIED AS MOOT.**

## Background

The property at issue in this case comprises approximately 18 acres of land located in Schererville, Indiana ("Site"). The plaintiffs began work at the Site in 1987, and by the summer of 1989, they had completed a road on the Site. During that summer, the plaintiffs hired a soil specialist. The specialist submitted his study, without reference to the identity of the property, to the United States Army Corps of Engineers ("Corps"). The Corps did not become aware of the plaintiffs' project until the Indiana Department of Environmental Management ("IDEM") notified the Corps of a possible violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, on November 3, 1989.

When the Corps visited the Site on November 7, 1989, it discovered that the Site had been cleared, graded, ditched, and that over 28,000 cubic yards of fill material had been dumped onto more than five acres of wetlands. The Corps determined that the Site is a wetland which drains an area of approximately 6.43 square miles and is connected to a drainage channel which flows into the Little Calumet River.

The Corps notified the plaintiffs of their CWA violations in a letter dated November 22, 1989. On November 28, 1989, the plaintiffs requested an after-the-fact ("ATF") application from the Corps. The Corps decided that it would accept the ATF application and agreed to a 30 day extension for the plaintiffs to complete the application. The application that eventually was filed on January 16, 1991, contended that the discharges were permitted by nationwide permit number 26 ("NWP 26"). The application was deficient, so the Corps requested that the plaintiffs correct the problems. In addition, the Corps decided that because the proposal for discharge of fill material was in a wetland area greater than ten acres, a nationwide permit could not be granted and that the Corps would review the ATF application under the individual permit processing procedures when the application was complete. The Corps indicates, and the plaintiffs do not deny, that the plaintiffs continued to dump material on the Site and, despite requests from the Corps, did not stabilize the existing fill. (CAR Tabs 16, 24, 25, 27).

The ATF application was completed on April 9, 1992, and the Corps issued the required public notice. The Corps received many comments opposing the application and

one comment in favor of it. In addition, IDEM denied water-quality certification for the application, stating that the mitigation plan attached to the application was inadequate. Nevertheless, the Corps continued to process the plaintiffs' application.

The Corps issued an Environmental Impact Assessment and a 404(b)(1) Compliance Evaluation on September 23, 1993. In this report, the Corps identified several adverse environmental impacts of the plaintiffs' project. The Corps also noted that the project did not comply with the 404(b)(1) Guidelines because it was not a water-dependent activity and practical alternatives to the project existed. Consequently, the Corps denied the ATF application and issued a restoration order.

The plaintiffs contend that they have satisfied the requirements of NWP 26 and, therefore, the Corps wrongfully denied them a permit. Also, the plaintiffs claim that IDEM violated their due process rights by failing to comply with the Administrative Adjudication Act, IC 4-21.5-2-1 *et. seq.*, when IDEM denied the water quality certification. Finally, the plaintiffs argue that the Corps has waived any objections to the plaintiffs' failure to provide advance notice of any discharges. The defendants claim that the plaintiffs do not satisfy the criteria set forth in NWP 26. They contend that the plaintiffs have not challenged the denial of the individual permit and, thus, the decision should be upheld.

*Discussion*

**Standard of Review**

■ Judicial review of the Corps' action is pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Federal courts must uphold an agency decision unless the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Cowherd v. United States Department of Housing and Urban Development,* 827 F.2d 40, 42 (7th Cir.1987); and *Frisby v. United States Department of Housing and Urban Development,* 755 F.2d 1052, 1055 (3rd Cir.1985). This standard of review is highly deferential. *O'Connor v. Corps of Engineers, U.S. Army,* 801 F.Supp. 185, 189 (N.D.Ind.1992); and

*Salt Pond Associates v. Army Corps of Engineers,* 38 ERC 2098, 2104, 1993 WL 738478 (Del.1993). The Supreme Court has noted:

To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Incorporated v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)

In other words, because this is an appeal of an administrative decision, the proper inquiry is:

(1) Did the Corps reasonably interpret its enabling statute, which is § 404 of the Clean Water Act, 33 U.S.C. § 1344? and

(2) Did the Corps rationally apply this interpretation to the facts of this case?

*O'Connor,* 801 F.Supp. at 189

*See also Bersani v. United States Environmental Protection Agency,* 674 F.Supp. 405, 412 (N.D.N.Y.1987).

■ Substantial deference also is given to the Corps' interpretation and application of the CWA. *Chevron, U.S.A., Incorporated v. Natural Resources Defense,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). As long as the Corps' interpretations and applications of Section 404 and its accompanying regulations are reasonable, they will be upheld. *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783.

**Nationwide Permit Number 26**

The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The statute prohibits the discharge of dredge or fill material into United States waters without permission from the Corps. *Hoffman Group, Incorporated v. Environmental Protection Agency,* 902 F.2d 567, 568 (7th Cir.1990). The Corps may authorize discharges of pollutants under specified conditions pursuant to Section 404 of the

CWA. 33 U.S.C. § 1344. Individuals who discharge dredge or fill material without permission may request that the Corps accept an ATF permit application. 33 C.F.R. § 326.3(e). Whether the Corps will grant a permit depends upon "the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." 33 C.F.R. § 320.4(a)(1).

The Corps must balance the "benefits which reasonably may be expected to accrue from the proposal ... against the reasonably foreseeable detriments." 33 C.F.R. § 320.4(a). Factors that may be relevant include:

[C]onservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shore erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs, considerations of property ownership and, in general, the needs and welfare of the people.

33 C.F.R. § 320.4(a)(1)

Where a dredge-and-fill permit application does not concern a water-dependent project, the Corps must assume that practicable alternatives exist unless the applicant "clearly demonstrates otherwise." 40 C.F.R. § 230.10(a)(3). This is so because "unnecessary alteration or destruction of [wetlands] should be discouraged as contrary to the public interest." 33 C.F.R. § 320.4(b)(1). In addition, the Corps cannot issue a 404 permit unless the applicant has received state certification that the proposed project will comply with water quality standards. 33 U.S.C. § 1341(a); 33 C.F.R. § 320.4(j)(1); and *Arkansas v. Oklahoma*, 503 U.S. 91, 103, 112 S.Ct. 1046, 1055, 117 L.Ed.2d 239 (1992).

The CWA provides that the Corps can issue general 404 permits on a state, regional or nationwide basis under certain circumstances. 33 U.S.C. § 1344(e). The plaintiffs sought the Corps' approval of their filling of the wetlands after-the-fact under a nationwide permit, specifically NWP 26. NWP 26 covers the discharge of material into United States waters that either are above the headwaters or are isolated waters, provided that the discharges cause the loss or substantial adverse modification of 1 to 10 acres of such waters, including wetlands. 33 C.F.R. § 330.5(a)(26). "Headwaters" refers to the point on a non-tidal stream above which the average annual flow rate is less than five cubic feet per second. 33 C.F.R. § 330.2(b). "Isolated waters" are non-tidal waters which are not part of a surface tributary system to interstate or navigable waters of the United States. The district engineer must be notified if the discharges cause the loss or substantial adverse modification of 1 to 10 acres of such waters. 33 C.F.R. § 330.5(a)(26).

The plaintiffs contend that their activities fell within the parameters of NWP 26 because their project would not cause the loss of more than 10 acres of United States waters. However, more than acreage must be considered in determining whether an individual is eligible for NWP 26. In this case, the plaintiffs' project fails to meet all of the requirements of NWP 26. NWP 26 only applies to wetlands which are isolated or above the headwaters. The plaintiffs do not dispute, or even address, the issue of whether the wetlands at the Site are isolated or above the headwaters.

The wetlands do not satisfy the definition of "headwaters". The Corps has established that an area of 6.40 square miles or more in Northwest Indiana generates a flow of five cubic feet per second. (Corps Administrative Record ("CAR") Tab 4, Sheet 1) The Corps' inspection on November 7, 1989, revealed that the wetlands at the Site drain an area of 6.43 square miles to the Cady Marsh Ditch. (CAR Tab 4, Sheet 1) The Corps concluded that the wetlands are below headwaters because the Site was .03 square miles greater than the 6.40 square mile standard in Northwest Indiana. The plaintiffs have not challenged these findings or demonstrated that it was unreasonable for the Corps to rely on these findings. Because the wetlands are not above headwaters, the plaintiffs' project does not qualify for NWP 26 unless the wetlands are isolated waters.

The Site also does not qualify for NWP 26 because the wetlands are not isolated waters.

The plaintiffs' environmental assessment established that the wetlands on the Site are part of a surface tributary system that leads to the Little Calumet and Grand Calumet Rivers. (CAR Tab 12, Environmental Assessment at 3) The Corps adopted this finding. (CAR Tab 71, at 7) The plaintiffs have not shown that the Corps' reliance on this analysis is arbitrary, capricious, or an abuse of discretion. Because the wetlands are part of a surface tributary system to navigable waters of the United States, the definition of an isolated water is not met. The statutory requirements have not been satisfied and, therefore, NWP 26 simply does not apply in this case. Consequently, the plaintiffs' claim that their activities were within the parameters of NWP 26 is erroneous, and it was proper for the Corps to require an individual permit processing procedure.

 Even if the wetlands were isolated waters or above the headwaters, the plaintiffs' contention that the Site qualifies for NWP 26 because only six acres would be destroyed also is without merit. The plaintiffs claim that because they had agreed to restore to natural condition any adversely affected acreage other than the six acres needed for their project, NWP 26 should have been issued.

It is true that the Corps found that the project would result in a net loss of six acres. (CAR Tab 72, ¶ e). However, net loss is not the only consideration. The regulation requires a determination of whether an area greater than ten acres was lost or substantially adversely modified by the discharges. The Corps decided that restoration would not cure the substantially affected area. The Corps also found that the Site is a significant natural area (CAR Tab 12, at 18) and that there would be major, long-term negative impacts on the Site even with the proposed restoration. (CAR Tab 71, at 8–10) In addition, the Corps found that the project is not a water-dependent activity. (CAR Tab 71, at 13) The presumption is that a practicable alternative exists unless the plaintiffs clearly demonstrate otherwise, which they have not. The plaintiffs have not shown that the Corps' decision was arbitrary or capricious, therefore it should be upheld.

 The plaintiffs also argue that the Corps invited the plaintiffs to submit an ATF application, thereby waiving any objection to the plaintiffs' failure to notify the Corps in advance of their fill activities as required by 33 C.F.R. § 330.7. The plaintiffs have not provided any support or authority for this conclusion, and the court has not uncovered any either. In light of the highly deferential standard of review of the Corps' decision, this court will not conclude without any supporting authority that the notification requirement may be waived. In fact, the NWP provisions that were in effect at the time that the Corps discovered the plaintiffs' violations stated:

> Nationwide permits are valid only if the conditions applicable to the nationwide permits are met. Failure to comply with a condition does not necessarily mean the activity cannot be authorized but rather that the activity can only be authorized by an individual or regional permit.

33 C.F.R. § 330.1 (1990)

The Third Circuit also has noted that it would not allow the applicants to rely on NWP 26 as a defense to their unauthorized discharge because they failed to provide the Corps with predischarge notification. *United States v. Pozsgai*, 999 F.2d 719, 732 n. 8 (3rd Cir.1993). Similarly, it is reasonable to conclude that the plaintiffs in this case may not rely on NWP 26 because they did not satisfy the notification requirement.

The Corps carefully weighed all of the relevant factors and followed the appropriate procedures in evaluating the plaintiffs' application. In fact, the Corps stretched their own rules by granting extensions, permitting the plaintiffs to file after deadlines, and allowing corrections to deficient applications. Not only did the Corps find that the permit requirements were not met, but it found that the project would be contrary to the public interest. (CAR Tab 72, at 2) The plaintiffs have failed to show that they satisfied the requirements of NWP 26 or that the Corps' decision was arbitrary, capricious, or an abuse of discretion. Thus, summary judgment in favor of the Corps is proper.

### State Water Quality Certification

The plaintiffs' project does not qualify for NWP 26, so the plaintiffs' claim that IDEM violated their due process rights when it denied water-quality certification is moot. Despite the plaintiffs' arguments to the contrary, the Corps denied their application without regard to IDEM's denial of water-quality certification. All of the Corps' analysis was independent of IDEM's denial of water quality certification, thus the plaintiffs could not have been harmed by any action taken by IDEM.

■ Furthermore, any claim that IDEM did not give the plaintiffs proper notice also must fail. If state water-quality certification has been denied, notice to the aggrieved parties is required under I.C. § 4–21.5–3–5(a). The notice must include a brief description of the order and a brief explanation of the available procedures and the time limit for seeking review.

Despite plaintiffs' contention otherwise, IDEM did provide the required information. In a letter, IDEM specifically informed the plaintiffs:

> The applicant is requested to provide a more detailed mitigation plan and explain how the functions and values of the original 18 acre wetland will be replaced through the "restoration" of the 12 acre parcel.... If you have any questions, contact Mr. Andrew R. Ellis of my staff at 317/243–5149.
>
> (Letter from IDEM to Colonel Richard Kanda, with copies to the plaintiffs, dated September 1, 1992)

This letter provided a detailed description of the problems with the plaintiffs' project and gave the plaintiffs an opportunity to correct the deficiencies and to ask any questions regarding procedures or time limits. The plaintiffs did not follow up on IDEM's request.

■ Even if the letter was not sufficient notice, the plaintiffs were not prejudiced by any action taken by IDEM.

> Failure to notify any of these persons is not grounds for invalidating an order, unless an unnotified person is substantially prejudiced by the lack of notice. The burden of persuasion as to substantial prejudice is on the unnotified person.
>
> Ind.Code Ann. § 4–21.5–3–5(f) (West 1991)

Indiana courts also have held that "[i]n judicial appeals from administrative decisions, trial courts may not reverse for errors which are non-prejudicial and harmless." *Department of Financial Institutions v. Colonial Bank & Trust Company*, 375 N.E.2d 285, 288 (Ind.App.1978); and *Ogilvie v. Review Board of the Indiana Employment Security Division*, 133 Ind.App. 664, 184 N.E.2d 817, 824 (1962). For an error to be prejudicial, it must affect the substantial rights of the aggrieved party. *Foster v. Review Board of the Indiana Employment Security Division*, 413 N.E.2d 618, 621 (Ind.App.1980).

In this case, the plaintiffs' rights were not affected. The plaintiffs had the opportunity to re-submit their proposed plan with the corrections specified in the letter. They also were invited to call the person listed in the letter with any questions. Furthermore, the plaintiffs' ability to receive a permit was not affected by IDEM's denial of water-quality certification because the two decisions were completely independent of each other.

For the foregoing reasons, the Motion for Summary Judgment filed by the plaintiffs, Walter G. Reichelt, Barbara J. Reichelt, Robert J. Delco, and Jeanne M. Delco, on November 3, 1994, is **DENIED,** the Cross Motion for Summary Judgment filed by the defendant, the United States Army Corps of Engineers, on December 19, 1994, is **GRANTED,** and the Cross Motion for Summary Judgment filed by the defendant, the Indiana Department of Environmental Management, on January 13, 1995, is **DENIED AS MOOT.**