Clarence V. BIRD and Roseadean Bird, Defendants-Appellants,

v.

DELAWARE MUNCIE METROPOLITAN PLAN COMMISSION, Plaintiff-Appellee.

No. 2–480 A 85.

Court of Appeals of Indiana, First District.

Feb. 17, 1981.

Sidney E. McClellan, Muncie, for defendants-appellants.

Wayne J. Lennington, Muncie, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellants Clarence V. Bird and Roseadean Bird (Birds) appeal a judgment in favor of plaintiff-appellee Delaware-Muncie Metropolitan Plan Commission (Commission) entered by the Delaware Superior Court ordering a mandatory injunction against Birds requiring them to remove illegal structures erected in violation of the 1973 Comprehensive Zoning Ordinance of Delaware County, State of Indiana.

We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to the judgment are: sometime between 1969 and 1971 Birds relocated two structures upon their property of less than two acres which bordered the right of way fence to U.S. Highway 35.[1] Birds had never obtained an improvement location permit (building permit) to erect these buildings upon their property. They set back one structure twenty-four feet and the other thirty-three feet from the highway right of way fence. Both structures remained unoccupied and in unliveable condition from the time of their relocation until the Spring of 1978.[2]

1. Both of these structures were in a state of total disrepair. Testimony disclosed them to be mere shells, gutted buildings, lacking plumbing, windows, doors, roofing and walls, and they were exposed to the natural elements.

2. In the past, Mr. Bird has moved at least two houses per year for twenty-five years as a side business. He was aware of the then-existing 1971 zoning ordinance (1971 ordinance) requiring that he obtain a building permit before

On December 11, 1973, the Delaware County Comprehensive Zoning Ordinance (1973 Ordinance) was enacted. The ordinance applied to all unincorporated territory of Delaware County, including Center Township where Birds' above-described property was located. Under the ordinance, Commission is authorized to develop all planning and zoning in Delaware County. Birds knew in 1973 that their property had been reclassified under the provisions of the 1973 ordinance as a limited industrial zone. Mr. Bird had visited the Delaware County Building Commissioner's office sometime in 1973 to obtain a permit for another house, but had neglected to obtain a permit for the two structures already erected upon his property. Furthermore, while Mr. Bird was at the building commissioner's office, he inspected the 1973 ordinance noting that his property had been rezoned limited industrial and that residential dwellings were a permitted use in such zone. On April 30, 1974, the Administrative Zoning Officer (Zoning Officer) to the Commission issued two building permits to Birds. Both applications for the permits inaccurately described the dimensions of Birds' property as being five and one-half acres per structure which meant that the two structures were located upon an eleven acre tract. Actually Birds' real estate amounts to less than two acres. Mr. Bird testified that the zoning officer came out to his house and filled out the permit applications in Mr. Bird's presence. Mr. Bird denied having filled out the application himself and knowing that five and one-half acres was given to describe the size of his property surrounding each structure.[3] On March 14, 1975, the zoning officer sent Birds a letter notifying them that

relocating or erecting structures upon his property.

3. For Birds to obtain building permits for the two structures on less than two acres, they must comply with the 1964 Delaware County Subdivision Control Ordinance requiring them to subdivide and plat their property. Birds would be exempt from complying with the subdivision ordinance only in the event that each structure rested on five acres of land.

their 1974 permits had been revoked because the two structures did not comply with the 1973 Ordinance, i. e. Birds' property was zoned limited industrial which includes performance standards requiring that no building be erected closer than one hundred feet to a dwelling; Birds' structures must be set back one hundred feet from the highway; and storage of certain materials in the structures violating the 1973 ordinance. Birds were given until April 30, 1975, to remove the two structures. Following revocation of their 1974 building permits, Birds never obtained any other building permits from Delaware County.

On May 3, 1978, the zoning officer placed a stop work order upon Birds' property. Birds ignored this order and continued working on the two structures up until two weeks before the trial of this cause.

At the close of the evidence, the trial court issued findings of fact and conclusions of law which read as follows:

"1. That the Defendants, Clarence V. Bird and Rosadean Bird, between 1969 and 1971 moved or relocated two houses upon the real estate owned by them and described in Plaintiff's Complaint.

2. That said houses remained upon said real estate in an uninhabitable and unoccupied condition until after the passage of the Delaware County Comprehensive Zoning Ordinance on December 11, 1973.

3. That in April, 1974 the Defendants applied for and received an improvement location permit for the relocation and remodeling of said houses which said permits were later revoked.

4. That said houses remained uninhabited until early in 1978 when the defendants repaired and moved into one house and the other house has never been occupied.

5. That in May of 1978, the Zoning Administrator of Delaware County placed stop work orders upon the premises and the Defendants disregarded the same and continued work upon said houses.

6. That the real estate of the defendants is zoned Limited Industrial under the 1973 ordinance and is located along and adjacent to U.S. Highway # 35 a major highway and said buildings are located closer than 100 feet to said highway.

7. That the 1973 zoning ordinance requires that no structure in said zoning shall be located within 100 feet of a major State or County highway and that the structures of the Defendants are in violation of said zoning ordinance.

8. That said structures do not constitute a legal non conforming use in that no use of the structures was in existence at the time of the passage of the December 11, 1973, zoning ordinance.

9. That the structures of the Defendants do not qualify under Article VIII Section 1 of the 1973 zoning ordinance because the Defendants did not obtain a building permit under the prior law, did not commence construction within 90 days and did not diligently pursue the same to completion.

10. That the structures of the Defendants are in violation of the 1973 zoning ordinance and are illegal uses subject to being enjoined by this Court.

11. That pursuant to I.C. 18–7–5–95 and Article XXXII Section 3, H of the 1973 zoning ordinance the Plaintiff is entitled to have issued against the Defendants a mandatory injunction requiring the removal of said illegal structures."

## ISSUES

Birds present the following issues for our review:

I. Whether the trial court erred in overruling Birds' motion for a change of venue from the county;

II. Whether the trial court's verdict is supported by sufficient evidence; and

III. Whether the trial court's decision is contrary to law.

## DISCUSSION AND DECISION

*Issue I.* Change of Venue

■ Birds contend that they were denied a fair trial by the trial court's overruling of

their motion for a change of venue from the county. They argue in their motion to correct errors it is mandatory that the trial court grant their venue motion which was timely filed and to refrain from taking any further action in the cause, citing *City of Fort Wayne v. State Ex Rel. Hoagland*, (1976) 168 Ind.App. 262, 342 N.E.2d 865, as supporting authority. Birds correctly state the general rule that in civil actions once a proper and timely motion for change of venue is filed, the trial court is divested of jurisdiction except to grant the change of venue. *Teegarden v. Sattison*, (1980) Ind. App., 404 N.E.2d 1163; *State Ex Rel. Yockey v. Superior Court of Marion County*, (1974) 261 Ind. 504, 307 N.E.2d 70; *Anderson v. Sell*, (1971) 150 Ind.App. 262, 276 N.E.2d 194; Ind.Rules of Procedure, Trial Rule 76. However, Commission correctly points out in its brief that specific statutory authority disallows a change of venue from the county in cases of this kind as set forth in Ind.Code 18–7–5–95 which reads:

> "The plan commission, the board of zoning appeals or any designated enforcement official may institute a suit for injunction in the circuit court of the county to restrain an individual or a governmental unit from violating the provisions of this act or of an ordinance enacted pursuant to its terms. The plan commission or the board of zoning appeals may also institute a suit for a mandatory injunction directing an individual or a governmental unit to remove a structure erected in violation of the provisions of this act or of an ordinance enacted pursuant to its terms. If the plan commission or the board of zoning appeals is successful in its suit, the respondent shall bear the costs of the action.
>
> *A change of venue from the county shall not be granted in such a case.*" (Emphasis added.)

It is clear from the express language of the statute that Birds are not permitted a change of venue from the county. The trial court committed no error.

*Issues II and III. Sufficiency of the evidence; Contrary to Law*

When reviewing a case in which the judge has rendered findings of fact, this court will not set aside the judgment unless it is clearly erroneous. *Lawrence v. Ball State University Board of Trustees*, (1980) Ind.App., 400 N.E.2d 179; Ind.Rules of Procedure, Trial Rule 52. The trial court's judgment will be upheld if it is sustainable on any legal theory; in addition, the Court of Appeals will not reweigh the evidence nor resolve questions of credibility of witnesses, but rather will affirm if there is sufficient evidence of probative value to sustain the decision of the trial court. *Rees v. Heyser*, (1980) Ind.App., 404 N.E.2d 1183.

Birds' answer to the complaint filed by Commission consisted of the following statement, contained in a letter of the shown date:

"4–24–78

Metropolitan Plan Comm.
Gentlemen:

In regard to complaint namely cause # 2S–78/250—Ct. # 2. I would state zoning laws that went into effect 12–11–1973 do not apply to these buildings as they were there prior to this date above. My bond # 41593 was released on 2–22–1971 After Property management sec. Div. of land Acq. of State Highway Comm. of Ind. Personnel of above office found an inspection that moving of those bldgs. had been satisfactorily completed as of 2–22–1971.

This verifies date of location of these bldgs.

I would like 60 days from this date—"today" to put buildings in good liveable repair or remove same.

Clarence V. & Roseadean Bird
4–24–1978"

At trial, Birds neither initiated a direct challenge to the 1973 ordinance or its proper application, nor did they seek a variance or special permit from the Commission's office for their buildings. In the motion to correct errors, Birds raised for

the first time many additional issues and arguments. We will not entertain arguments not properly raised at trial. This we simply cannot allow for it would subvert the very purpose of the appellate process. We review arguments raised at trial to decide whether the trial court has erred in its findings and rulings on matters clearly before it. To permit Birds the benefit of raising entirely new arguments on appeal would vitiate the trial process. This we are forbidden to do.

In *Van Bibber v. Norris*, (1980) Ind.App., 404 N.E.2d 1365, 1382, Judge Young stated:

"Generally speaking, a defendant has the burden to put his defense in issue. *Rogers v. State*, (1978) 267 Ind. 654, 373 N.E.2d 125, 127. A defendant can do this by presenting the appropriate pleadings and evidence. Id.; see Ind.Rules of Procedure, Trial Rule 8(C). The Van Bibber *defendants cannot overthrow the judgment on the basis of an argument or issue which they never clearly disclosed to the trial court*. Health & Hospital Corp. of Marion Cnty. v. Gaither, (1979) Ind., 397 N.E.2d 589, 593; *Dunn v. Jenkins*, (1978) Ind., 377 N.E.2d 868, 877; *Indiana Aeronautics Comm'n v. Ambassadair, Inc.*, (1977) 267 Ind. 137, 368 N.E.2d 1340, 1347. This discussion points out that the Van Bibbers *have raised this argument for the first time in their motion to correct er-*

*rors*. This is too late. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166, 173; *Johnson v. State*, (1979) Ind., 390 N.E.2d 1005, 1009. *Because the argument on issue was not raised until after trial the Van Bibbers waived it*." (Emphasis added.)

As noted above, Birds principally contend, as they did at trial, that the two structures were erected on their property when the 1971 ordinance was in effect and the property was classified R–4 Residence Zone. Under the R–4 Residence Zone classification of the 1971 ordinance, a variety of permitted uses are listed which include single family and two-family dwellings. Unoccupied, uninhabitable structures in and of themselves are not qualified uses in a R–4 Residence Zone. Under the same classification, residence front yards had to be set back only twenty-five feet from a right of way line. According to the provisions of the 1971 ordinance, Birds were required to obtain building permits.[4]

■ Birds contend that they had placed their structures "in accordance with the then effective zoning ordinance," while at the same time, they admit having violated the provisions of that ordinance by not obtaining building permits. Moreover, under the 1971 ordinance Birds were required to obtain a certificate of occupancy.[5] Further-

4. "ARTICLE XXII IMPROVEMENT LOCATION PERMIT
Section 1
Any person, persons, firms or corporations proposing to construct or reconstruct a building or structure, or proposing to use land for certain purposes shall, prior to beginning of construction or the beginning the use of land, shall make application for an improvement location permit. Said permit may be issued by the Administrative Zoning Officer, if it is presented to him a site plan of the real estate involved together with essential information which may be required in forms made available by the said officer.
The said permit may be issued five (5) days after the aforementioned data is received. The site plan shall be drawn to scale showing the legal site description of the real estate; the location and size of all buildings and structures; the width and length of all entrances and exits to and from the real estate; and all adjoining roads or highways."

5. "ARTICLE XXII CERTIFICATE OF OCCUPANCY
Section 2
A Before any land is used or before any new building is occupied or used for any purpose, a certificate of occupancy shall be obtained from the Administrative Zoning Officer. This certificate shall be evidence that the building or the use is in compliance with this Ordinance. No occupancy permit shall be required for land proposed to be used for farming purposes.
B A certificate of occupancy shall be obtained whenever a building or structure is structurally altered, or the use of the building or structure changed.
C The certificate of occupancy shall be applied for at the time of the filing of the application for an Improvement Location Permit. Such certification may be issued within ten (10) days after the building or structure is completed and is ready to be occupied."

more, by Birds' own admission the structures were not made liveable until sometime in 1978. Birds have clearly not complied with the provisions of the 1971 ordinance, their structures amounting to an illegal use thereof. Upon passage of the 1973 ordinance, Birds' structures, not being a preexisting legal use, did not acquire lawful status as legal nonconforming uses.[6]

As a new argument, Birds contend that should the 1973 ordinance govern their structures, the twenty-five foot residential zone rather than the one hundred foot limited industrial zone setback requirements are the operant sections. Assuming, *arguendo*, that Birds' structures were residential dwellings upon the passage of the 1973 ordinance, an examination of the setback requirements of the ordinance is necessary. The purpose for including setback provisions in a comprehensive zoning plan is to protect the safety, health or general welfare of the public. For industry, greater setbacks from property and right of way lines is a reasonable requirement because of the greater potential danger to the public that the presence of industry brings, i. e. harmful vapors, excessive noise, harsh fumes, and volatile explosives. Because setback requirements do interfere with the enjoyment of property rights, such requirements must be *reasonable*. *Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses*, (1954) 233 Ind. 83, 117 N.E.2d 115; *Church of Christ in Indianapolis v. Metropolitan Board of Zoning Appeals of Marion County*, (1978) Ind.App., 371 N.E.2d 1331. It is necessary to examine the particular facts and circumstances of each case in order to determine whether the setback provisions are reasonable or applicable to a given use of property. At trial, Birds did not challenge the reasonableness of the limited industrial zone setback provisions, but instead argued that residential zone setbacks applied to their structures.

ARTICLE XXIII IL LIMITED INDUSTRIAL ZONE, Sec. 2 PERMITTED USES, provides:

> "No building, structure of land shall be used and no building or structure shall be hereafter erected, structurally altered, enlarged or maintained except for the following uses:
>
> 1. *Uses permitted in all Business Zones."* (Emphasis added.)

ARTICLES XVIII CENTRAL BUSINESS ZONE, XIX LIMITED BUSINESS ZONE, XX COMMUNITY BUSINESS ZONE, and XXI VARIETY BUSINESS ZONE permit single family and multi-family dwellings under their permitted uses. Front yard requirements of business zones range from no specific setback in a Central Business Zone to a twenty-five foot setback requirement for limited business, community business and variety business zones.

Appellee contends that the limited industrial zone's Article XXIII PERFORMANCE STANDARDS, Sec. 9C SETBACKS is the correct provision to apply to Birds' structures, and it provides in relevant part:

> "ARTICLE XXIII SETBACKS. *No part of any structure* (excluding an eave or cornice overhang not to exceed four (4) feet, or a canopy at an entrance) shall be built not closer than one hundred and twenty (120) feet to an Interstate Highway; one hundred (100) feet to a

**6.** We find it curious Birds expressly do not argue that the structures amount to nonconforming uses under the 1973 ordinance; nonetheless, they assert the 1971 ordinance "applies." This contention makes no sense at all for only legal uses prior to the enactment of the 1973 ordinance are exempted from complying with its provisions.

ARTICLE IX, Sec. 19 PROOF OF NONCONFORMITY of the 1973 ordinance provides:

"STATEMENT OF LEGISLATIVE INTENT AS TO NONCONFORMING USES AND PRIOR RIGHTS: RULE OF CONSTRUCTION

It is the intent of the Board of County Commissioners *not to interfere, exclude, or prohibit properly established uses, structures or businesses that are not nuisances, which existed prior to the enactment of this Ordinance*; nor is it the intent to abrogate or divest rights acquired by parties under any prior zoning practices. The Ordinance shall be liberally construed to favor said prior rights, especially when a party has relied on those rights to his or its detriment." (Emphasis added.)

major state or county highway; eighty-five (85) feet to a secondary highway; and sixty-five (65) feet to any other street or highway." (Emphasis added.) [7]

However, we are of the opinion, as Birds point out in their brief, that the application of Section 9C is more clearly understood when it is read together with Sections 9D, E, F, G, H, I, J, and K which provide: " * * *

D SCREENING. Where a front or rear yard abuts a dwelling or Business Zone, a masonry wall, fence or compact hedge or row of shrubbery or evergreen trees shall be provided alone or within twenty (20) feet of the zone lot line. Such screening shall be not less than six (6) feet in height.

E HEIGHT. Along any front, side or rear yard adjacent to a Residence or Business Zone, the maximum vertical height shall be twenty-five (25) feet. For each foot of height in excess of twenty-five (25) feet one (1) additional foot shall be provided.

F EMISSION. The emission of smoke, particulate matter and noxious and toxic gases shall be subject to the regulations of the State of Indiana Board of Health and/or any and all air pollution control laws, ordinances or statutes passed before and after the enactment of this Ordinance. The storage, utilization or manufacture of products or materials shall conform with the standards prescribed by the National Fire Protection Association. Such storage, utilization or manufacturing shall not produce a hazard or endanger the public health, safety and welfare of the people of the County of Delaware, Indiana.

G DISCHARGE. No use shall accumulate or discharge any waste matter, whether liquid or solid, in violation of applicable standards set forth by the State of Indiana Board of Health, the Stream Pollution Control Board of the State of Indiana or any pertinent local governmental agency. Sewage disposal plants and industrial waste treatment shall be approved by the Stream Pollution Control Board.

H SOUND. No use shall produce sound in such manner as to endanger the public health, safety and welfare of the people of the County of Delaware, Indiana. Sound shall be muffled so as not to become detrimental or a nuisance due to pressure, amount, intermittence, heat, frequency, shrillness or vibration.

I GLARE AND HEAT. Any use established after the enactment of this Ordinance shall be operated so as to comply with performance standards governing glare and heat as set forth by the State of Indiana.

J FIRE AND EXPLOSIVES. Storage, utilization or manufacture of products and materials shall conform to the standards prescribed by the National Fire Protection Association.

K RADIATION. Any use shall conform to the Atomic Energy Commission standards for protection against radiation. Also, the electronmagnetic standards of the Federal Communications Commission shall be complied with."

Clearly the setback requirements under the limited industrial zone of the 1973 ordinance pertain only to *industrial uses and industrial buildings* and not to residential dwellings. Our perceiving of Sec. 9C SETBACKS as applying *only* to industrial uses and buildings is further borne out by Sec. 8A of Article XXIII *Performance Standards*, which provides:

"GENERAL. No permit shall be issued for the erection, relocation, or expansion

---

**7.** The drafters of this Article unintentionally created a double negative by writing "No part . . . not closer than." To read the Article as such would make no sense at all and defeat the purpose of the zone classification, and therefore, we interpret this section to state, "No part . . . closer than."

of any *industrial use or building* unless the same complies with the performance standards set forth herein." (Emphasis added.)

From our reading of the 1973 ordinance, we conclude that residential setbacks of twenty-five feet would be applicable to a dwelling located within a limited industrial zone. The trial court erred in finding that all structures within a limited industrial zone must be located at least one hundred feet from a major highway. Nonetheless, in the instant case, Birds' structures do not amount to residential dwellings. Had Birds used the structures as residences at the time of the passage of the 1973 ordinance, they would have substantially complied with the residential setback requirements in locating their one structure twenty-four feet from the highway right of way line. However, Birds had no properly established use of their buildings upon the enactment of the 1973 ordinance. The record discloses, as the trial court had found, the two unlawful structures remained unoccupied and uninhabitable until sometime in 1978.[8] Testimony revealed these structures to be mere "shells": no windows, no doors, incomplete outside walls, and they were open to the elements. Article IX, Sec. 2 Unlawful Use of the 1973 ordinance provides:

> "*Any building, structure or use which was not lawful at the time of the enactment of this Ordinance, and which is in violation of the provisions of this Ordinance, shall be considered to be unlawful* under the terms of this Ordinance." (Emphasis added.)

It is clear from our reading of the provisions of the 1973 ordinance that Birds never maintained a legal existing use of the structures.

Having violated the provisions of the 1971 and 1973 ordinances, Birds were or-

dered by the trial judge to remove the structures. Removal as a remedy has the express sanction of both Ind.Code 18–7–5–95 and Article XXXII, Sec. 3H Remedies of the 1973 Ordinance.[9] Although Birds received a building permit in April, 1974, it was revoked by the zoning officer on March 14, 1975, for noncompliance reasons. Despite revocation of these building permits, Birds continued to work on their structures. On May 3, 1978, Birds were served with a stop work order from the zoning administrator's office. In blatant disregard of that order, Birds continued to work on their structures. Mr. Bird testified that he had been working on the roof of one building as recently as two weeks before trial. Therefore, Commission was correct to initiate a suit for injunctive relief to restrain Birds from violating the 1973 ordinance.

■ The evidence substantially supports the trial court's findings that these structures were in violation of the 1973 ordinance. We conclude in view of the fact Birds: did not obtain a building permit when they first had erected these structures; continued to work on these structures after revocation of a subsequently issued permit; blatantly defied stop work orders served on them personally, and continued to work on these illegal structures until two weeks before trial, the trial court was correct in applying the severe remedy of ordering the removal of these structures. The Indiana General Assembly clearly intended such a remedy and we find the action of the trial court in issuing a mandatory injunction requiring the removal of the illegal structures neither excessive, unreasonable, nor contrary to law.

In summary, we hold that in a limited industrial zone a residence is subject only to the twenty-five foot setback requirement,

8. The structures must have been uninhabitable to at least April 24, 1978, since Birds' Answer to Commission's Complaint gives that date as the point in time from which they wished to "put buildings in good livable [sic] repair or remove same" in sixty days.

9. "REMEDIES. The Commission, the Board or any designated enforcement official may institute a suit for injunction in the Delaware County Circuit Court to restrain an individual or a governmental unit from violating the provisions of this Ordinance. Said bodies may also institute a suit for mandatory injunction directing an individual or governmental unit to remove a structure erected in violation of the provisions of this Ordinance."

and not the one hundred foot setback as required by the trial court in findings No. 6 and 7. Further, we hold that a residence is not a non-conforming use in a limited industrial zone. We are of the opinion that this cause should be affirmed because of Birds' failure and refusal to apply for and receive the required building permit and otherwise conform his activity to the requirements of the ordinance and instructions of the zoning officer.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.