John D. LIND, M.D., Appellant
(Plaintiff Below),

v.

MEDICAL LICENSING BOARD OF INDIANA, Appellee (Defendant Below).

No. 2–279A48.

Court of Appeals of Indiana,
Second District.

Oct. 21, 1981.

---

John T. Scott, David W. Stone, IV, Scott & Scott, Anderson, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant John D. Lind, M.D. (Lind) appeals from the trial court's refusal to set aside the revocation of his medical license, raising numerous constitutional, procedural, and evidentiary errors.

We affirm.

## FACTS

This cause was initiated when the Medical Licensing Board of Indiana (Board) sought to discipline Lind under Ind.Code § 25-22.5-6-2[1] for being convicted of violating 18 U.S.C. §§ 371 (conspiracy), 842(h) (unlawfully dealing with stolen explosives), 844(i) (damaging property used in interstate

1. I.C. § 25-22.5-6-2 lists the charges which may be grounds for the probation, suspension, or revocation of a license. *See* footnote 2, *infra*.

commerce by means of an explosive); and 26 U.S.C. §§ 5861(d), 5871 (possession of unregistered firearms). At a January 11, 1977 hearing, Lind's license was suspended until the appeal of his convictions in the federal courts was concluded.

Lind appealed from this suspension to the Superior Court of Hamilton County, that court reversing and remanding the cause to the Board for further findings of fact on April 25, 1977. After remand the Board filed charges against Lind in an instrument dated December 21, 1977, the Board claiming he had violated I.C. § 25–22.5–6–2(2), (5), (6), and (8).[2] Omitting formal parts, the charging instrument reads:

CHARGE I

That John D. Lind, M.D., did knowingly, purposely and illegally commit acts which [*sic*] a felony conviction resulted, said acts having a direct bearing on whether or not the respondent should be entrusted to serve the public as a licensed physician which conviction is recorded as Cause # I.P. 76–61–CR in the U.S. District Court, Southern District of Indiana, for violation of the laws of the United States.

SPECIFICATIONS

1. That John D. Lind, M.D., *conspired to firebomb the Anderson Plumbing Company*, a privately owned business establishment located in Anderson, Indiana, which said firebombing was committed with utter disregard for the life and safety of any person or persons within the premises or the general public.

2. That John D. Lind, M.D., *did illegally obtain and possess* a dangerous substance, to-wit, *dynamite.*

3. That John D. Lind, M.D., did store and conceal stolen explosive materials, to-wit, dynamite, knowing and having reasonable cause to believe explosive materials were stolen.

4. That John D. Lind, M.D., *did knowingly and purposely conspire and agree together with a patient to maliciously attempt to damage and destroy* by means of an explosive material, to-wit, dynamite *Plumb-Rite Supply Corporation* facility of Anderson, Indiana, a structure being used in a business between the corporation and the general public.

5. That John D. Lind, M.D., *committed illegal acts for which he was convicted in utter disregard for the physician-patient relationship and with utter disregard for the safety, welfare, health and life of his patient.*

CHARGE II

That John D. Lind, M.D., did knowingly and illegally *furnish a drug classified as a narcotic, addicting or dangerous drug to a habitue or addict.*

SPECIFICATIONS

1. That John D. Lind, M.D., did knowingly furnish certain drugs in the form of pills, to-wit, quaalude, a Schedule II controlled substance as defined by law to one Gary Lake, a known habitue or addict.

2. That John D. Lind, M.D., did knowingly furnish certain drugs in the form of pills, to-wit, black beauties, a Schedule II controlled substance as defined by law to one Gary Lake, a known habitue or addict.

2. I.C. § 25–22.5–6–2(2), (5), (6), and (8) provide:

To promote uniformity among the several states and territories and to provide guidelines for physicians and the board, the following charges will be grounds for probation of a licensee or suspension or revocation of a license:

(2) the acts from which a felony conviction resulted, if the acts have a direct bearing on whether or not the person should be entrusted to serve the public as a licensed physician;

(5) except as otherwise permitted by law, to knowingly prescribe, sell or administer any drug classified as a narcotic, addicting or dangerous drug to a habitue or addict;

(6) willful or wanton misconduct or manifest incapacity in the practice of medicine or osteopathic medicine;

(8) the willful performance of an act likely to deceive or harm the public.

CHARGE III

That John D. Lind, M.D., is a duly licensed physician in the State of Indiana and actively engaged in wilful and wanton misconduct in the practice of medicine.

SPECIFICATIONS

1. That John D. Lind, M.D., while engaging in the practice of medicine as a licensed physician did wrongfully, immorally and illegally influence a patient or person who submitted himself to said physician as a patient to commit acts and violate the laws of the United States.

2. That John D. Lind, M.D., while engaging in the practice of medicine as a licensed physician did knowingly and illegally conspire and agree together with a patient to violate the laws of the United States, to-wit:

1. (a) being convicted of violation of 18 U.S.C. 844(i)

(b) being convicted of violation of 18 U.S.C. 842(h)

(c) being convicted of violation of 18 U.S.C. 371

2. being convicted of violation of 26 U.S.C. 5861(d) and 5871

3. being convicted of violation of 18 U.S.C. 844(i)

4. being convicted of violation of 18 U.S.C. 842(h) as indicated in the following attachment from the U.S. Dept. of Justice, Southern District of Indiana In Cause No. I.P. 76–61–CR.

3. That said John D. Lind, M.D., *while engaged in the practice of medicine as a licensed physician did conspire with and cause a patient, to-wit, Gary Lake, to discharge a firearm* loaded with bullets and aimed *at* or against another person, to-wit, *Ted S. Doles, M.D.*, with intent to injure or kill said person.

4. That said John D. Lind, M.D., while engaged in the practice of medicine as a licensed physician *did conspire with and cause a patient, to-wit, James Farrington, to discharge a firearm* loaded with bullets and aimed *at* or against another person, to-wit, *Ted S. Doles, M.D.*, with intent to injure or kill said person.

5. That said John D. Lind, M.D., while engaged in the practice of medicine as a licensed physician *did conspire with and cause a patient, to-wit, Gary Lake, to discharge a firearm* loaded with bullets and aimed *at* or against another person, to-wit, *Phillip D. Foley, M.D.*, with intent to injure or kill said person.

6. That said John D. Lind, M.D., while engaged in the practice of medicine as a licensed physician *did conspire with and cause a patient, to-wit, James Farrington, to discharge a firearm* loaded with bullets and aimed *at* or against another person, to-wit, *Phillip D. Foley, M.D.*, with intent to injure or kill said person.

7. That said John D. Lind, M.D., while engaged in the practice of medicine as a licensed physician did knowingly immorally instigate, lead, initiate and plan acts of violence in violation of the laws of the United States and wrongfully and knowingly *use and dispense illegal drugs to influence a patient to conspire and agree together with said patient to commit a violation of the laws of the United States.*

CHARGE IV

That John D. Lind, while duly licensed as a physician wilfully performed acts likely to harm the public.

SPECIFICATIONS

1. That John D. Lind., did knowingly, purposely and illegally *cause to be used a dangerous explosive material, to-wit, dynamite*, in a manner likely to kill, injure or otherwise harm the general public.

*Record* at 633–34.

Lind filed a "Motion to Make More Specific-Motion for Bill of Particulars" to which the Board responded on March 13, 1978, three days before a hearing scheduled for March 16, 1978. The Board's response to the motion (Response), which Lind says included charges not listed in the original charging instrument, reads in pertinent part:

Specification 3:

a) When and where did this conspiracy occur?

*Answer*: Latter part of February and early March; in Dr. Lind's Office.

b) When did this discharge of firearm take place?

*Answer*: March 27, 1975.

Specification 4:

a) When and where did the conspiracy occur?

*Answer*: March 27, 1975; Driveway of Dr. Doles, 2200 Forest Drive, Middletown, Indiana.

b) When did this discharge of firearm take place?

*Answer*: March 27, 1975.

Specification 5:

a) When and where did this conspiracy take place?

*Answer*: Various times, various places.

b) When did this discharge of firearm take place?

*Answer*:

Specification 6:

a) When and where did this conspiracy occur?

*Answer*: Varies [*sic*] times, various places.

Specification 7:

a) What acts of violence does specification refer to and what violation of laws?

*Answer*: Fire bombing Plumb Rite Co.

b) What illegal drugs were used and dispensed? When was this done?

*Answer*: Quaalude and Biphetamines. At various times.

c) What drugs were used?

*Answer*: Quaalude and Biphetamines.

CHARGE I

Specification 4:

a) Name of patient referred to in said charge.

*Answer*: Gary Lake

Specification 5:

a) Name of patient.

*Answer*: Gary Lake

CHARGE II

Specification 2:

a) Medical term for "black beauties".

*Answer*: Biphetamines

CHARGE III

Specification 1:

a) Name of patient.

*Answer*: Gary Lake, James Raymond Farrington, *Bill Pinyon*

b) When did he influence said patient?

*Answer*: He influenced Gary Lake and James Raymond Farrington during February and March of 1975 to commit acts and violate laws of the United States on March 27, 1975. He also influenced Gary Lake and James Raymond Farrington on or about October 10, 1975. *He influenced Bill Pinyon to commit acts and violate laws of the United States* in the Summer and Spring of 1972, October of 1972, the Summer of 1973 and Fall of 1974.

c) How did he influence said patient?

*Answer*: Doctor Lind influenced the patients by combinations of persuasion, drugs, financial rewards and promises of financial rewards.

d) What illegal acts?

*Answer*: Gary Lake and James Farrington were influenced to shoot at a physician and bomb a business. *Bill Pinyon was influenced to attempt a burglary at the Middletown Clinic in Anderson, Indiana. Bill Pinyon was also influenced by Doctor Lind to attempt a homicide of Dr. Phillip P. Foley, M.D. Pinyon was also influenced to be an accessory to the commission of a burglary and an arson at the Middletown Clinic. Finally Pinyon was influenced to commit burglaries* and vandalism,

*Record* at 629–31 (emphasis added).

Based upon evidence at the March 16, 1978 hearing, the Board revoked Lind's license to practice medicine, making these findings and conclusions, in part:

The Medical Licensing Board, after hearing and seeing the evidence in this matter, and hearing arguments of Counsel in this matter now finds the following facts and conclusions:

. . . .

2) Notice of time and place of hearing was given as provided by law by mailing, by certified mail, notice of hearing to John D. Lind, M.D., in care of Warden George Ralston, U.S. Penitentiary, Terre Haute, Indiana. Proof of delivery of this notice of hearing has been received, and the Respondent, John David Lind, M.D., appeared in person before the Board.

3) The President inquired into whether each member of the Board could give a fair hearing and render an impartial decision, and no member disqualified himself.

4) The *Respondent was convicted in the U.S. District Court,* Southern District of Indiana on the 10th day of September, 1976, and sentenced to the Federal Prison for a term of nine (9) years.

5) That *Respondent induced James R. Farrington and Gary Lake, two of his patients,* to dump trash in people's yards, to throw paint on some houses, to throw bricks through big windows in the Plumb-Rite Plumbing Company, in Anderson, Indiana, *to shoot a gun at Ted Doles, M.D., and Philip D. Foley, M.D.*

6) That *Respondent paid James R. Farrington and Gary Lake for criminal acts* by giving them free medical care, alcoholic beverages, drugs and money.

7) That Respondent induced Bill Pinyon, Jr. and Gary Lake, two of his patients, to break and enter and to burn the Middletown Clinic.

8) That Respondent attempted to influence one of his patients, Bill Pinyon, Jr., to commit murder, by killing Philip D. Foley, M.D.

9) That Respondent induced one of his patients, Bill Pinyon, Jr., to buy unregistered guns and ammunition.

10) That Respondent paid Bill Pinyon, Jr., for criminal acts by giving him free medical care and money.

CONCLUSIONS

That the *licenses* of John David Lind, Jr., to practice medicine in the State of Indiana *should be revoked for the following reasons:*

—that he did knowingly, purposely and illegally *commit acts from which a felony conviction resulted, said acts having a direct bearing on whether or not the respondent should be entrusted to serve the public as a licensed physician* which conviction is recorded as Cause # I.P. 76–61–CR in the U.S. District Court, Southern District of Indiana, for violation of the laws of the United States;

—that while licensed as a physician, he actively engaged in *willful and wanton misconduct in the practice of medicine;*

—that while duly licensed as a physician, he *willfully performed acts likely to harm the public.*

*Record* at 82–83 (emphasis added).

From this revocation of his license, Lind again appealed to the Superior Court of Hamilton County, which refused to overturn the Board's decision. Failing at the trial court, Lind took his appeal to this court. In an unpublished opinion handed down on December 8, 1980, we concluded that the trial court's findings of fact were insufficient and remanded for further findings. 415 N.E.2d 163. The trial court obligingly complied with our Order and certified these additional findings and conclusions:

FINDINGS OF FACT

1. On the 11th day of January, 1977, the Board of Medical Registration and Examination of Indiana held a hearing with reference to a notice of hearing directed by the Board of Medical Registration and Examination of Indiana to the petitioner, Dr. John D. Lind.
2. The specific charge, made against Dr. Lind in affidavit form, was violation of I.C. 25–22.5–6–2(2) by virtue of his conviction of certain felonies in federal court.

3. The only evidence introduced at the hearing was a certified copy of a judgment and commitment from the United States District Court, Southern District of Indiana, Indianapolis Division, setting out the charges of which Dr. Lind was convicted.

4. In its findings of fact and conclusions of law the Board of Medical Registration and Examination of Indiana merely found that Dr. Lind had been convicted of various felonies and concluded that it had jurisdiction and that all charges had been properly filed. The Board, thereupon, ordered the suspension of Dr. Lind's license, pending the outcome of his appeal, pursuant to I.C. 25–22.5–6–2(2).

5. On February 4, 1977 Dr. Lind petitioned for judicial review in Madison County Superior Court No. 2. Upon granting of Motion for Change of Venue, the Petition for Review was moved to this Court.

6. Upon hearing oral arguments, the Court found that the finding, decision, and determination of the respondent board was without observance of procedure required by law in that it failed to make findings of fact as required by I.C. 4–22–1–10 and I.C. 25–22.5–6–2(2) and ordered the decision of the respondent board set aside and remanded the case to the respondent board for further proceedings.

7. On March 16, 1978 the Medical Licensing Board of Indiana again held a hearing with reference to a notice of hearing directed by the Medical Licensing Board of Indiana to the petitioner, Dr. John D. Lind, Jr. Thereafter, the Medical Licensing Board entered its findings of fact and conclusions and revoked the license of Dr. Lind to practice medicine in the State of Indiana. The Board's finding and conclusions are as follows:

(H.I.)

8. The record contains substantial evidence, properly admitted, to support the Board's findings of fact.

9. The Court finds that the Medical Licensing Board observed the prescribed notice requirements, proper procedures for conduct of the hearing, and all other procedures required by the Administrative Adjudication Act.

10. The Court finds no action or intent by the respondent board to exceed or circumvent the authority and jurisdiction of I.C. 25–22.5–6–2, the statute providing authority and guidance for imposition of probation, license suspension, or license revocation by the Medical Licensing Board of Indiana.

11. The members of the respondent board who participated in the voting, upon being questioned, indicated that they would be able to afford Dr. Lind an unbiased hearing.

12. Dr. Kwitny did not participate in the vote to revoke Dr. Lind's license to practice medicine in Indiana.

13. The charges against the petitioner, Dr. Lind, were sufficiently specific to allow the preparation of a defense to the charges.

14. The petitioner was represented at the hearing by counsel. Petitioner had opportunity to cross examine, to be heard, and to call witnesses. Petitioner had at least fifteen (15) days notice of the charges against him and of the fact that Mr. Pinyon was listed as a witness.

CONCLUSIONS OF LAW

1. The evidence supporting the Board's findings is substantial; the Court on judicial review is not, therefore, impowered to disturb those findings.

2. Based on its findings of fact regarding the conduct of the hearing, the Court concludes that the members of the Board participating in the deci-

sion to revoke Dr. Lind's license were not prejudiced or otherwise incapable of rendering an impartial decision and that the Board was not in any other way arbitrary, capricious, or abusive of its discretion.

3. The action of the Board was not in excess of statutory jurisdiction, authority, or limitation. The conclusions of the Board are supported by its findings of fact, and the conclusions are within the authority and guidelines of the statute (I.C. 25–22.-5–6–2). The findings of the Board display sufficient connection with Dr. Lind's practice of medicine to be within the contemplation of the statute.
4. Because the Administrative Adjudication Act requires specific findings of fact by the administrative agencies and because of the easy availability of the safeguards of judicial review under the Administrative Adjudication Act, I.C. 25–22.5–6–2, as applied through Indiana's administrative procedures, is not so broad, vauge, [*sic*] or arbitrary as to be unconstitutional.
5. There being a lack of evidence to the contrary, the Court concludes that the Medical Licensing Board observed all procedures required by the Administrative Adjudication Act and other Indiana law.

ORDER

The Medical Licensing Board of Indiana having complied with the procedural requirements of the Administrative Adjudication Act, and its findings and decision being supported by substantial, reliable, and probative evidence, it is hereby ORDERED that the decision and determination of the respondent Board shall not be set aside or disturbed.

From the trial court's further findings and conclusions, Lind again appeals to this court.

ISSUES

Lind has presented thirty issues on appeal, which we have consolidated into four issues for clarity and convenience:

(1) Were the sections of the statute under which Lind's medical license was revoked and the charges as brought under those sections unconstitutionally vague or overbroad? [Issues 1, 2]

(2) Did the Board deny Lind due process of law by failing to give him proper notice of all charges and refusing to grant a continuance? [Issues 3, 4, 17–20]

(3) Did the Board's alleged bias deny Lind due process of law and the right to a fair hearing? [Issues 5–8, 13–16]

(4) Was the Board's decision based on proper findings which were supported by substantial evidence, and did the trial court make improper findings or err in affirming the Board's decision? [Issues 21–23, 26–30]

█ Lind also argues that the Board applied a standard of proof which denied him due process or equal protection of the law, in that the Board applied a substantial evidence test. [Issues 24, 25] Lind concludes that the Board applied a substantial evidence burden of proof from the Board's statement on page 95 of the record; however, we find no objection by Lind to the statement and Lind points us to no timely objection made to the procedures outlined at the beginning of the hearing. The argument is therefore waived. *Bird v. Delaware Muncie Metropolitan Plan Commission,* (1981) Ind.App., 416 N.E.2d 482; *Fleming v. Pyramid Coal Corp.,* (1951) 122 Ind.App. 41, 100 N.E.2d 835; *Dorozinski v. Review Board of the Indiana Employment Security Division,* (1951) 121 Ind.App. 367, 98 N.E.2d 911; A.R. 8.3(A)(7).

We summarily dispose of three arguments by Lind. [ISSUES 9–12].

█ First, the Board would not permit Lind to question witness Farrington as to his address. The Board obviously discovered during the course of proceedings that Farrington was one of several witnesses

who required some type of protection. *See* Record at 140, 148–49. We cannot say that the Board's conclusion was unreasonable under the circumstances; the Board did not err in refusing to order disclosure of Farrington's address. *See Butler v. State,* (1978) Ind.App., 372 N.E.2d 190.

Second, assuming part of Farrington's testimony over objection was hearsay, Lind's only claim of prejudice is that hearsay constituted the only evidence for the Board's fifth (causing a gun to be shot at Drs. Doles and Foley) and sixth (paying for criminal acts) findings. The record discloses otherwise. Farrington testified that Lind spoke to both Farrington and Lake about shooting at Dr. Doles. *See Record* at 168. Because both of these findings would permit revocation of the license, *see* discussion *infra,* no prejudice has been shown.

Third, as to Lind's contention that a transcript was improperly admitted, he likewise fails to demonstrate prejudice. Even if the transcript were irrelevant and immaterial, reversal would not *necessarily* follow.

DECISION

ISSUE ONE—Vagueness or overbreadth—

PARTIES' CONTENTIONS—Lind claims that I.C. § 25–22.5–6–2(2), (6), and (8) relating to probation, suspension, and revocation of licenses are unconstitutional both as written and applied because of their vagueness and overbreadth.

The State rejoins that the statute is valid, as already indicated by prior case law.

CONCLUSION—Neither the statutory sections under which Lind's license was revoked nor the charges as brought under those sections are constitutionally infirm.

A. STATUTE

Courts must consider challenges to a statute on constitutional grounds with "due regard to constitutional constraints upon their authority to void statutes." *Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625, 627. The judiciary must accord statutes

> every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Sidle v. Majors,* (1976) 264 Ind. 206, 341 N.E.2d 763; *Robertson v. Reilly, supra* [266 Ind. 29, 360 N.E.2d 171]. Before a statute will be declared repugnant to the Constitutions its fatal constitutional defects must be clearly apparent. *Board of Commissioners of Howard Co. v. Kokomo City Plan Commission, supra* [263 Ind. 282, 330 N.E.2d 92].

*Johnson v. St. Vincent Hospital, Inc.,* (1980) Ind., 404 N.E.2d 585, 591. With these restraints in mind we have appraised Lind's argument and found it to be wanting.

Virtually all courts which have passed on the validity of licensing statutes phrased in general terms have concluded such statutes are not infirm due to vagueness or overbreadth, reasoning, in part, that the general terms have a definite and well-understood meaning. *See* 61 Am.Jur.2d, *Physicians and Surgeons* § 77 (1981); 93 A.L.R.2d 1398 (1964 & Supp.1981); Annot., 5 A.L.R. 94 (1920); 54 A.L.R. 1504 (1928).

That the Indiana Medical Licensing Statute is not unconstitutional for vagueness or overbreadth was decided many years ago by the Indiana Supreme Court. When confronted with the question of constitutionality of the prior Indiana licensing statute, the court in *Spurgeon v. Rhodes,* (1906) 167 Ind. 1, 78 N.E. 228, used this language:

> Statutes containing a provision like the one in question here, authorizing the board to *revoke* a license *when* the holder has been *guilty of a felony or of gross immorality, have been held not to violate any provision of the federal or state Constitutions,* and it has been held that the granting or refusing to grant a license to practice medicine, or the revocation thereof by the board, is not the exercise of judicial power.... (Emphasis added).

*Id.* at 11–12, 78 N.E. at 231. The basis for the holding was extended in *Indiana Board of Pharmacy v. Haag,* (1916) 184 Ind. 333, 340, 111 N.E. 178, with these words:

> "It is a practicable impossibility to set out in a statute in detail every act which

would justify revocation of a license. The requirements of the statute can only be stated in general terms and reasonable discretion reposed in the officials charged with its enforcement. The statute in question is not void for uncertainty." Grounds commonly designated by statute upon which a medical board is authorized to revoke a physician's license, are "unprofessional, dishonorable or immoral conduct." 30 Cyc 1557–1559.

In contrast with the prior Indiana statute, the current statute is conspicuously more descriptive in enumerating conduct which may form the basis of a revocation:

(1) the use of any false, fraudulent or forged statement or document, or the use of any fraudulent, deceitful, dishonest or immoral practice in connection with any of the licensing or permit requirements;

(2) the acts from which a felony conviction resulted, if the acts have a direct bearing on whether or not the person should be entrusted to serve the public as a licensed physician;

(3) currently using or consuming a drug or intoxicant so as to render the licensee unsafe or unfit to practice medicine or osteopathic medicine;

(4) suffering from a mental or physical disability so as to render the licensee unsafe or unfit to practice medicine or osteopathic medicine;

(5) except as otherwise permitted by law, to knowingly prescribe, sell or administer any drug classified as a narcotic, addicting or dangerous drug to a habitue or addict;

(6) willful or wanton misconduct or manifest incapacity in the practice of medicine or osteopathic medicine;

(7) the practice of medicine or osteopathic medicine under a false or assumed name;

(8) the willful performance of an act likely to deceive or harm the public; or

(9) the suspension or revocation by another state of a license to practice medicine based upon acts by the licensee similar to acts described in this section. A certified copy of the record of suspension or revocation is conclusive evidence of the other state's suspension or revocation.

I.C. § 25–22.5–6–2. We view *Spurgeon* as controlling, and therefore conclude that Lind has failed to meet his burden of demonstrating a defect in the statute which is clearly repugnant to the Constitution.

## B. CHARGES

We are similarly unpersuaded by Lind's contention that the charges as brought were unconstitutionally vague, or that he was deprived of due process of law.

"Strict rules of pleading do not apply to proceedings" before the Medical Licensing Board. *Board of Medical Registration and Examination v. Moore*, (1947) 224 Ind. 621, 627, 70 N.E.2d 354, 356. Due process requirements are honored when the charges contain "sufficient facts ... to inform the [physician] of the nature of the accusation against him." *Id.*; *see* 61 Am. Jur.2d § 197. Indeed, that the charges need not be detailed is apparent from a reading of I.C. § 4–22–1–6:

> [The] notice shall set forth therein a sufficient statement of all matters of fact or law *to advise such person of the matters in issue and to be heard or determined* .... *Said statement may be informal* and need not conform to the requirements of a pleading in court. (Emphasis added).

The Board concluded that Lind violated I.C. § 25–22.5–6–2(2), (6), and (8), basing its conclusion on the findings that he had induced patients to discharge a gun at two physicians, had paid patients for the performance of criminal acts, and had been convicted of firearms violations in federal court.[3] The charging instrument contained all of these factual allegations. Although the acts and related circumstances were not detailed exhaustively, we can only conclude that Lind was adequately advised of the matters in issue and the nature of the charges against him.

3. The Board found Lind had committed other acts which could form the basis of a revocation. We do not discuss those grounds for reasons which will become apparent *infra*.

ISSUE TWO—Notice—

Did the Board deny Lind due process by failing to give him proper notice of all charges and refusing to grant a continuance?

PARTIES' CONTENTIONS—Lind maintains that the "Response to the Motion to Make More Specific—Motion of Bill of Particulars" (Response) contained charges in addition to those in the original charging instrument. Because the Response was served *three* days before the hearing, rather than five days as required by the Administrative Adjudication Act, and because the Board denied his request for a continuance, the Board's decision must be reversed.

The Board counters that it merely provided the additional information Lind requested.

CONCLUSION—Lind was not denied due process of law by inadequate notice of additional charges.

I.C. § 4–22–1–6 specifies that "in all cases in which the agency is the moving party it *shall give* at least *five [5] days notice* in writing ...." (emphasis added), and the statute has been held to be mandatory, *Grether v. Indiana State Board of Dental Examiners,* (1959) 239 Ind. 619, 159 N.E.2d 131; *Solar Sources v. Air Pollution Control Board,* (1980) Ind.App., 409 N.E.2d 1136.

Lind was given notice in the original charging instrument of charges which in themselves established three separate grounds for revocation of his medical license. Based on the original charging instrument the Board found that Lind had induced Farrington and Lake to shoot guns at Drs. Doles and Foley; had violated federal firearms regulations; and had paid Farrington and Lake for committing criminal acts. These findings alone would support the Board's conclusion that Lind's license should be revoked for the reasons that (1) he had engaged in the willful and wanton misconduct in the practice of medicine, (2) he had willfully performed acts likely to harm the public, and (3) he had committed acts from which a felony conviction resulted and which have a direct bearing on whether he should be entrusted to serve the public as a licensed physician.[4]

The additional conduct which the Board listed in the Response, at Lind's request, could also form the basis for a license revocation. The Board did eventually include some of these additional charges in its Findings; however, these additional charges are insignificant compared to those which already had been charged and which formed the basis for the revocation sought.

Lind was charged with *attempting* to influence Pinyon to kill Dr. Foley in the additional charges; he had already been charged with actually *influencing* two patients to shoot guns at Drs. Foley and Doles. The additional charges of paying Pinyon for criminal acts were mirrored by the existing charge that Farrington and Lake had also been paid. A similar observation applies to the additional charge of inducing Pinyon to purchase unregistered guns and ammunition. The only finding of any consequence based on conduct not included in the above comparison or charged originally was the burning of the Middletown Clinic. Although that act is hardly benign, it is equally true that it pales when placed beside the conduct originally charged.

So Lind has pointed us to no more than harmless, non-prejudicial error. We do not reverse for such errors:

> In judicial appeals from administrative decisions, trial courts may not reverse for errors which are non-prejudicial and harmless. *Ogilvie v. Review Board of Indiana Employment Security Division*

4. Although Lind avers that I.C. § 25–22.5–6–2(2) only permits a license revocation on the ground that the crime has a direct bearing on whether he should be entrusted to serve the public as a licensed physician, the statute refers to *acts* which form the basis of the crime. Because the acts which resulted in the conviction involved patients who were paid for criminal conduct, and involved acts which were dangerous to the lives of others, the Board did not err in concluding that these acts have a direct bearing on whether or not Lind should be entrusted to serve the public as a licensed physician.

(1972), 133 Ind.App. 664, 184 N.E.2d 817; *Deszancsity v. Oliver Corp.* (1948), 118 Ind.App. 504, 81 N.E.2d 703; 1 I.L.E., *Administrative Law & Procedure*, § 80; 73 C.J.S. *Public Administrative Bodies & Procedure* § 252. *See Indiana University v. Hartwell* (1977), Ind.App., 367 N.E.2d 1090; *L. S. Ayres & Company v. Indianapolis Power & Light Co.* (1976), Ind. App., 351 N.E.2d 814.

*Department of Financial Institutions v. Colonial Bank & Trust Co.*, (1978) Ind.App., 375 N.E.2d 285, 288; T.R. 61. Accordingly, any error by the Board in failing to give Lind the five-day notice of the additional charges under these circumstances is not reversible error. *Cf. Grether v. Indiana State Board of Dental Examiners, supra* (no adequate notice of recommendation); *Solar Sources v. Air Pollution Control Board, supra* (notice sent to wrong person); *City of Anderson v. State ex rel. Page*, (1979) Ind. App., 397 N.E.2d 615 (prejudice presumed because no indication of which charge formed the basis of the decision); *City of Fort Wayne v. Bishop*, (1949) 228 Ind. 304, 92 N.E.2d 544 (*no* charges made in compliance with statutes).

ISSUE THREE—Bias—

Did the Board's alleged bias deny Lind due process of law and the right to a fair hearing?

PARTIES' CONTENTIONS—Lind claims the Board was biased against him in that (1) the same persons who constituted the Board at the first hearing also constituted the Board at the second hearing; (2) the Board refused to permit Lind to question them as to their bias and ability to apply the law; (3) Dr. Kwitney, Secretary of the Board, participated in the proceedings although he had disqualified himself; (4) the State's attorney acted as prosecutor and advisor to the Board; (5) the Board ruled uniformly against Lind; and (6) the Board added new charges on remand.

The State's response, essentially, is to cite us to a case which the supreme court rejected in substance five years before the Appellant's Brief was filed with this court.

CONCLUSION—Lind was not denied due process of law.

The potpourri of procedural defects which Lind raises are meritless. Evident from his voluminous citation to opinions from other jurisdictions is a misconception that the full array of safeguards applicable to judicial undertakings applies to hearings before an administrative agency. The Supreme Court has attempted to eradicate this misconception more than once.

In *State ex rel. Paynter v. Marion County Superior Court*, (1976) Ind., 344 N.E.2d 846, 850, the court repeated its earlier language from *City of Mishawaka v. Stewart*, (1974) 261 Ind. 670, 310 N.E.2d 65:

> "We acknowledge that the proceedings before administrative bodies are not required to be conducted with all of the procedural safeguards afforded by judicial proceedings, even when such proceedings are judicial in nature. We accept a lower standard in proceedings before quasi-judicial bodies because it would be unworkable to do otherwise. There are, nevertheless, standards below which we should not go." *City of Mishawaka v. Stewart, supra* at 68.

This distinction between judicial and administrative procedure is a product of "due process," a concept which should not be inflexibly applied to every imaginable situation. *Sandlin v. Review Board of Indiana Employment Security Division*, (1980) Ind. App., 406 N.E.2d 328; *Cafeteria Workers v. McElroy*, (1961) 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230. " 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interest involved and the nature of the subsequent proceedings.' " *City of Mishawaka v. Stewart*, (1974), *supra* 261 Ind. at 677, 310 N.E.2d at 68 (quoting *Boddie v. Connecticut*, (1971) 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113).

So it is not necessarily a denial of due process that the same members comprise the Board on remand; *Indiana State Board of Tax Commissioners v. Brown*, (1980) Ind.App., 410 N.E.2d 1205; K. Davis, Administrative Law Text § 12 (3d ed. 1972);

1 Am.Jur.2d, *Administrative Law* § 65 (1962); that all rulings be uniformly against one party, *K. Davis, supra*; or that a member of the Board, such as Dr. Mader, gives an answer to a hypothetical question which indicates a previously held opinion on some matter of law or policy. F. Cooper, 1 State Administrative Law 342 (1965); K. Davis, 3 Administrative Law Text § 192 (2d ed. 1980); 1 Am.Jur.2d, *Administrative Law*, § 65 (1962).

Nor is it a denial of due process for the State's attorney to speak with the Board during recess. Assuming the State's attorney acted as both prosecutor and legal advisor to the Board, no violation of due process *necessarily* results from this combination of functions.

Of course the prosecutor may not participate in the determination of factual issues. Thus, in *City of Mishawaka v. Stewart, supra*, the Supreme Court concluded that the city attorney could not serve as both the prosecutor and as a *member* of the hearing tribunal. And again in *City of Hammond v. State ex rel. Jefferson*, (1980) Ind.App., 411 N.E.2d 152, this court saw a due process violation when a deputy city attorney served as prosecutor before the city attorney, who was a *member* of the Board.

However, no due process violation was discovered in *State ex rel. Paynter v. Marion County Superior Court, supra*, when the Attorney General *advised* the Health Facilities Council in both its investigation-prosecuting and decision making roles. Such facts did "not all equate with the *Mishawaka* situation. The Attorney General may advise, but it is the council itself which decides." *State ex rel. Paynter, supra* at 850. And so it is with the Medical Licensing Board—the State's attorney may advise, but the Board decides.

Similarly unpersuaded are we by other facts which Lind claims demonstrate bias. Dr. Kwitney did sign the Board's order; however, his signature was required by I.C. § 25–22.5–2–4, and he announced at the hearing that he would not vote.

The Board did limit questioning of members as to their bias, but only after Lind's attorney unduly elongated the proceedings by reading page after page of court opinions of jurisdictions around the country. All members except one had been questioned extensively at the first hearing; and all members of the Board, save Dr. Kwitney who disqualified himself, indicated they were not biased against Lind. Any blame for limited questioning must be shared by Lind's attorney.

Finally, Lind's argument that the Board denied him due process by adding new charges is waived by failure to cite appropriate authority. A.R. 8.3(A)(7). "The Medical Practices Act is clearly not a criminal statute and the rules pertaining to criminal statutes which appellant here asserts have no application" to proceedings before the Board. *See Dean v. State of Indiana ex rel. Board of Medical Registration and Examination of Indiana*, (1953) 233 Ind. 25, 28, 116 N.E.2d 503, 505.

ISSUE FOUR—Findings and Evidence—

Was the Board's decision based on proper finding of acts which were supported by substantial evidence, and did the trial court make improper findings of fact or err in affirming the Board's decision?

PARTIES' CONTENTIONS—According to Lind, both the Board and trial court made insufficient findings of fact, the evidence was insufficient to support the findings, and the trial court applied the wrong standard of review.

The State sees the findings as being sufficient, but fails to respond to Lind's other allegations.

CONCLUSIONS—The trial court applied the appropriate standard of review in correctly determining that the findings were sufficient and supported by sufficient evidence.

The purpose of findings of fact is to facilitate judicial review, to permit an intelligent review. *Hawley v. South Bend*, (1978) Ind., 383 N.E.2d 333. *Kunz v. Waterman*, (1972) 258 Ind. 573, 283 N.E.2d 371. In light of the ample record before us,

the number of issues which were raised, and the findings themselves, we are unable to say that the findings preclude an intelligent review of the Board's decision.

And it seems the decision to revoke the license was supported by sufficient evidence. The "Judgment and Commitment" which was admitted into evidence supports the Board's finding that Lind had been convicted in Federal Court. Farrington's own testimony that he cooperated in firing a gun at Dr. Doles in exchange for money to be paid by Lind, *Record* at 168, supports the Board's finding that Lind induced a patient to commit those criminal acts.

Assuming procedural requirements have been met, an administrative decision can only be overturned if it is not supported by "substantial, reliable and probative evidence." I.C. § 4–22–1–18. Although Lind avers that the trial court applied the wrong standard of review, his claim is speculative by his own admission. Implicit in the trial court's findings and conclusions is an understanding of the proper standard of review and awareness of the grounds for reversal contained in I.C. § 4–22–1–14.

AFFIRMED.

SULLIVAN, J., and STATON (sitting by designation), J., concur.